## DECKER *v.* SCHUMACHER.

1. NEW TRIAL—DISCRETION OF COURT.

Ordinarily the granting of a motion for new trial rests in the sound discretion of the trial court and affirmance of a denial of such motion depends on whether prejudicial error was committed.

2. TRIAL—COERCING JURY TO REACH VERDICT.

When it is claimed that a jury has been coerced into returning a verdict, all of the facts and circumstances must be considered as well as the particular language used by the trial judge.

3. SAME—JURY—INSTRUCTIONS AS TO AGREEMENT.

What a court may say to a jury as to its duty to try to agree may not be so stated as to carry the inference that it is their duty to agree upon a verdict.

4. SAME—JURY—AGREEMENT—COMPROMISE.

Although jurors should, by their discussions, harmonize their views if possible, it is not contemplated that they shall compromise, divide and yield for the mere purpose of an agreement.

5. SAME—COERCING JURY TO REACH VERDICT.

In action arising out of collision between automobiles wherein case was given to jury early in the morning of the third day of the trial, later the same day jury informed the judge they were in disagreement as to whether plaintiff was guilty of contributory negligence, and parts of the testimony were read to the jury the following morning, statements by the court during colloquy with jury late on the fourth day of the trial to the effect that it took unanimous agreement of the jury in order to come to a verdict and other remarks about fitness of persons for jury service and expenses to the county, attorneys and litigants, followed by verdict of no cause for action early in morning of fifth day of trial, *held*, to constitute coercion of jurors into agreeing on a verdict contrary to the individual convictions of some of the jurors.

Appeal from Washtenaw; Sample (George W.), J. Submitted June 7, 1945. (Docket No. 37, Calendar No. 42,954.) Decided June 29, 1945.

Case by Chester A. Decker and General Exchange Insurance Corporation against William E. Schumacher to recover for damages sustained in an automobile accident. Verdict and judgment for defendant. Plaintiff appeals. Reversed and new trial granted.

*Allan G. Aigler, Ralph W. Aigler* and *Victor H. Lane, Jr.,* for plaintiffs.

*Frank B. DeVine,* for defendant.

BOYLES, J. The only question here for decision is whether the jurors were coerced by the court into rendering a verdict, as a result of which a new trial should be granted.

This is a damage suit arising out of a collision between two automobiles. As usual, the essential

issues of fact submitted to the jury were whether the defendant was guilty of negligence and, if so, whether plaintiff Chester A. Decker was guilty of contributory negligence. Testimony was received from witnesses for each of the parties, the conflicting testimony disclosed the usual sharp issues of fact, and the case was submitted to the jury after lengthy instructions from the court, concerning which no complaint is made.

The case was given to the jury on a Thursday morning. Later in the same day the jury asked for and received permission to confer with the court. In court the foreman said to the judge, among other things:

"We can't agree exactly on who contributed the negligence or whether they both did. * * * We are in general disagreement—that is about all."

The court asked how the jury stood and was told that they (the jurors) thought the defendant was guilty of negligence but nine claimed that the plaintiff driver was guilty of contributory negligence and were for "no cause for action." After a lengthy discussion between court and jury concerning credibility of witnesses, the discrediting of testimony, the degree of care that a prudent driver must use, and the duty of a driver in a sudden emergency, the court told the jury it could recess until 9:30 the next (Friday) morning when he would have the court stenographer read the conflicting testimony on certain questions raised. The court said:

"It will take another jury if you can't agree. It will take another jury three or four days to arrive at the same place you are at now, and I would rather you come back in the morning at 9:30 and attempt to agree upon it."

At 9 : 30 Friday morning the jury came into court, parts of the testimony were read by the stenographer, and a further discussion ensued between court and jurors which concluded as follows:

"*The Court:* I think you should go back to the jury room and consider this testimony—and unless you are able to agree that Mr. Decker was free from negligence, then you can't bring in a verdict for him.

"*The Foreman:* Nine of us feel he was guilty of contributory negligence and three members of the jury think that he was a prudent driver and done the proper thing.

"*The Court:* Three to nine *can't bring in a verdict* you know.

"*The Foreman:* We understand that.

"*The Court:* So what are you going to do? Are you going to dispose of it? Or are you going to leave the thing hanging so that we'll have to try it again? I think I'll ask you to go back to the jury room and talk the thing over."

At 4:30 the same afternoon the jury requested opportunity of the court to ask further questions, were brought into court, and this occurred:

"*The Court:* Have you agreed upon a verdict?

"*The Foreman:* We have agreed to disagree.

"*The Court: You can't do that. That isn't a verdict,* you know.

"*The Foreman:* Well, some of the members, judge, wanted to come in and ask you some more questions.

"*The Court:* I am here, ready and willing to answer any that I can.

"*The Foreman:* At present we stand five to seven in favor of no cause.

"*The Court:* Seven for no cause and five disagreeing with you?

"*The Foreman:* I don't know just how you would say it—but we seem to be deadlocked. The seven don't feel they should hardly change their convictions, and the five say they'll never give up, and there you are. Just what are you going to do?

"*The Court:* There must be either five or seven contrary people on this jury. I hate to spend another four days on the trial of this case."

Then, after considerable further colloquy between the court and jurors, the court said:

"Well, what are you going to do? I don't know what to do with you. We had a jury that got started this way about a year ago. They hung on each case that they tried—couldn't decide a case. I don't say this jury will do that. We have got cases to be tried in this court and we don't want anybody to hang on them and it is a bad thing to get in the habit of hanging—of thinking you don't have to inquire into what the other party thinks about the case. If I were on a jury and voted according to the dictates of my conscience and all the rest did and it stood eleven to my one, that would upset me quite a little and I would wonder if I was the one that was wrong. I would consider the thing again in order to determine whether I was wrong. You should work just as hard to see if you are occupying the wrong position as to see if you are occupying the right position. Argue it out with the other party to see where you really belong and what you can do. *It takes a unanimous verdict of a jury in order to come to a verdict*—a unanimous agreement of the jury."

This was followed by further discussion during which the court continued to refer to the facts of the case, and then sent the jurors back to the jury room to "take another ballot and see if you can arrive at a verdict." Later the jury again "reas-

sembled" in the courtroom (Friday afternoon) where the following occurred:

"*The Court:* Any progress?

"*The Foreman:* We haven't made a particle of progress. We have argued this thing over and over and the minority say they will never change.

"*The Court:* What does the majority say?

"*The Foreman:* Pretty near the same thing. Neither side will change their vote.

"*The Court:* Everybody ought to be ready to change his vote when he is convinced.

"*The Foreman:* They refuse to be convinced. We have had a lot of arguments.

"*The Court:* I am sorry this has taken place at this time. You people have to approach the subject right in order to get a verdict. You haven't approached it with the right disposition. You are antagonistic. How do men and women agree on a thing? They don't take a position and say, 'You never can convince me.' *That sort of person can't be fit for jury service if he says that. You have to be convinced or you can't agree.* There isn't a jury in the world that will all vote the same on the first ballot—unanimous. Therefore, you have to be in position to agree when you are convinced.

"You can come back in the morning at 9:30 and try again, but this will be bad advertising to the attorneys. I look to see cases go over the term pretty fast unless you do agree because attorneys can't afford to spend the time and expense of trying cases before juries that will not arrive at verdicts. You have been here four days and tomorrow will be the fifth day of expense to the court for a jury and besides the length of time the attorneys have put in and the expense they have put in producing evidence. We can't hardly afford in this case to do it twice, so come back at 9:30 in the morning."

The next morning (Saturday) the jury reconvened and, after having had the case approximately

two and one-half days, shortly returned into court a verdict of no cause for action. Judgment was entered accordingly. Motion for new trial on the ground that the verdict was the result of coercion by the court was denied, and this appeal is from the order of denial.

Ordinarily the granting of a motion for new trial rests in the sound discretion of the trial court, and affirmance of a denial of such motion depends on whether prejudicial error was committed. This appeal is directed at the acts of the trial judge who conducted the trial and also decided the motion for a new trial, and justice requires that we give consideration to the ground relied on for setting aside the order denying a new trial.

We have considered the many cases cited by counsel and decided by this court where the question now before us has been raised. Plainly each decision has been controlled by the facts and circumstances, the length of time of the deliberations, and mainly on what was said in each case by the trial judge. As was said in *Zeitz* v. *Mara,* 290 Mich. 161, 166, and repeated with approval in *Gordon* v. *Samson,* 294 Mich. 294, 297:

"Examination of the authorities shows that, when it is claimed that a jury has been coerced into returning a verdict, all of the facts and circumstances must be considered as well as the particular language used by the trial judge."

A statement made by the judge after only five hours of deliberation (*Cook* v. *Vineyard,* 291 Mich. 375) might not coerce a jury into *arriving* at a verdict, while a different result might follow when jurors had continued to adhere to individual convictions after two days of deliberation, as in the case before us. What may be said by the court as to

their duty to *try to agree* then carries the inference that it is their *duty to agree.* Such is not the law.

"The law contemplates that they (the jurors) shall, by their discussions, harmonize their views if possible, but not that they shall compromise, divide and yield for the mere purpose of an agreement." *Goodsell* v. *Seeley,* 46 Mich. 623, 628 (41 Am. Rep. 183).

"The rule as stated in 38 Cyc. p. 1762, is, we think, the only safe one to follow:

" 'The court may impress upon the jury the propriety and importance of coming to an agreement, and harmonizing their views, state the reasons therefor and tell them it is their duty *to try to agree;* but should not give instructions having a tendency to coerce the jury into agreeing on a verdict. While the court may reasonably urge an agreement, its discretion does not extend to the limit of coercion.'

"See, also, *Pierce* v. *Pierce,* 38 Mich. 412; *People* v. *Engle,* 118 Mich. 287; *People* v. *De Meaux,* 194 Mich. 18." *People* v. *Strzempkowski,* 211 Mich. 266, 268 ( 10 A. L. R. 420).

In *People* v. *De Meaux,* 194 Mich. 18, after the jurors had been out for some time, they returned into court and were advised by the court as follows (pp. 28, 29):

"The Court: When you are placed on the jury, it is your sworn duty *to arrive at a verdict.* In order to arrive at a verdict you have got to discuss the matter impartially and fairly without prejudice, but you must do what you can to arrive at a verdict. That is what you are here for. Is there any portion of the law that you do not understand? (Several jurors answer 'No.')

"The Court: If not, I will send you back to your room with the instruction that you ought to arrive at a verdict."

This was held to be reversible error and the verdict was set aside on appeal.

Under the circumstances shown by the record before us we conclude that the statements of the court to the jury during the lengthy period of its deliberations resulted in coercing the jurors into agreeing on a verdict contrary to the individual convictions of some of the jurors. The plain purport of the statements made by the court to the jurors was that it was their duty to agree, and to arrive at a verdict.

The order appealed from is set aside and a new trial granted, with costs of this court to appellants.

Starr, C. J., and North, Wiest, Butzel, Bushnell, Sharpe, and Reid, JJ., concurred.