IN RE NORMA H. STERN, AN ALLEGED MENTAL IN-
COMPETENT.

Argued February 2, 1953—Decided March 9, 1953.

Mr. *Saul J. Zucker* argued the cause for the appellant Norma H. Stern, appearing by her next friend (*Messrs. Kristeller* and *Zucker*, attorneys).

Mr. *John D. Craven* argued the cause for the respondent Ralph L. Stern.

The opinion of the court was delivered by

HEHER, J. In a proceeding instituted by her brother, Norma H. Stern was adjudged "a mental incompetent as a result of unsoundness of mind" and "incapable of governing herself and managing her affairs," and a guardian was appointed; and she appeals, appearing by her next friend under an order of the Superior Court.

The judgment was entered on the verdict of a jury returned May 8, 1952, after a trial lasting three days; and it is urged that "supplemental remarks" made by the judge to the jury, when that tribunal reported a disagreement after deliberating five hours, "had the coercive effect of improperly inducing the verdict" of incompetency.

The jury commenced their deliberations at 11:20 A. M. At 12:50 P. M., they were reinstructed on the "burden of proof," to meet an exception directed to the charge. Deliberations were resumed at 1:05 P. M. At 4:20 P. M., a disagreement was reported. The jury had been instructed that a verdict could be rendered by ten or more of the jury agreeing. *N. J. S.* 2A:80–2. Thereupon, the judge said:

"Members of the Jury, you realize you have been trying to arrive at a verdict since 11:20 this morning, but we have been here two and a half days and the Court would appreciate it if you could see if you can arrive at a verdict, and therefore asks if you will not go back to the jury room, and the Court is willing to remain here until you arrive at a verdict. You, I am sure, realize that we have been here trying the case hoping to arrive at a verdict. It costs a lot of money to the state to maintain the court, and if you cannot arrive at a verdict it means that it will probably have to be retried which will take several days. See if you cannot arrive at a verdict. You may return to the jury room."

The jury retired and promptly returned with a verdict of mental incompetency by a vote of 10 to 2, so quickly, in fact, as to preclude the inference of renewed deliberation. It is stipulated that the verdict was rendered "in a matter of minutes," "in a few minutes," "almost immediately."

The jury did not interrupt their deliberations for lunch. No food was provided, and none was requested.

Obviously, when the jurors were exhorted to further effort at agreement and a verdict, there were more than two of the panel who were not convinced of the mental incompetency of the subject of the inquiry, and the jurors themselves believed their differences were irreconcilable. The quick response suggests that the economic factor adverted to by the judge was the decisive circumstance, although it had no relevancy to the substantive issue of fact within the jury's province. The judge did not inquire into the matters which were the subject of disagreement with a view of further instructions designed to clarify the issue and enlighten the jury for the fulfillment of its essential function. The sole ground urged for resolving the differences was the financial burden a retrial would lay upon the State, and the immediate

return of the verdict bespeaks an expedient surrender by one or more of the jurors of convictions entertained after more than five hours of discussion and deliberation. The denial to the alleged incompetent of the substance of the right of trial by jury is a compelling inference and the judgment is accordingly not sustainable.

Although allowable at the early common law, coercion of a jury is not permissible in any degree under our constitutional system of judicial administration. The resolution of the facts is the exclusive province of the jury, and an invasion of the independence of that tribunal vitiates the verdict.

It is of the very essence of the right of trial by jury that the verdict be free and untrammeled; and where the supplementary instruction has a natural tendency to interfere with the exercise of unfettered and unbiased judgment, by means of an illusory consideration or overemphasis of an extraneous factor, and the response is immediate, the inference of false direction and undue influence is entirely reasonable, if not indeed irresistible. Urging a jury to an agreement contrary to the individual opinion and judgment of one of the jurors on the merits of the issue may be coercion. The judge may not "attempt to coerce or compel the jury to agree upon a particular verdict, or any verdict," and a manifest effort to that end nullifies the verdict; the judge may urge on the attention of the jury the importance of an agreement, but agreement is not to be had at the sacrifice of the conscientious convictions of the individual jurors; the verdict of a jury "should not be the general average of the views of its individual members, but the consensus of individual judgment"; every juror "takes an oath that is individual, and that puts upon him as an individual the responsibility of correctly determining the matter submitted"; jurymen "act as individuals, and they must decide a case upon their own opinion and their own judgment, and not merely acquiesce in the conclusions of others." *People v. Faber,* 199 *N. Y.* 256, 92 *N. E.* 674, 676 (*Ct. App.* 1910).

An outward seeming agreement against the compulsions of

the jurors' own consciences is but a perversion of the principle of trial by jury. A verdict that does not rest upon the convinced understanding of the individual jurors can have no sanction. A juror cannot be "compelled to an agreement one way or the other. After all, a forced agreement is no better than none. If the consent of him who stands out against the rest be of any regard, it ought to be free; if of none, then why can't a verdict be given without it?" Emlyn's preface to the second edition of the State Trials, printed in 1730. There should be nothing in the judge's "intercourse with the jury having the least appearance of duress or coercion." *Green v. Telfair,* 11 *How. Prac.* 260 (*N. Y. Ct. App.* 1853).

It is only by weighing the circumstances that conclusions may be reached as to the consideration which moved the particular jury so promptly to come to a decision, and in this appraisal the law proceeds according to reasonable probability. The quickness of the verdict suggests that what was said influenced some of the jurors into an agreement with their fellows against their own personal convictions. The purpose of the judge is readily understandable. The design of a jury trial is a determination of the facts in keeping with legal principles; yet that determination can rest only on the conscientious convictions of the individual jurors comprising the number sufficient for a verdict, based on the evidence and the law as expounded by the judge. The instruction in question depends not upon the motive of the judge, laudable as it may have been; it is assessed by the natural sense and significance of the words used. It was within the discretionary province of the judge to allude to all the factors making agreement desirable, including the expense attendant upon a retrial; but such an instruction is fundamentally deficient unless the jurors be told that none should surrender his conscientious scruples or personal convictions to that end. *Vide Railway Express Agency v. Mackay,* 181 *Fed. 2d* 257, 19 *A. L. R. 2d* 1248 (*C. C. A.* 8 1950); *Re Cocklin's Estate,* 232 *Iowa* 266, 5 *N. W. 2d* 577 (*Sup. Ct.* 1942); *Gaddy v. Harmon,* 191 *Ga.* 563, 13 *S. E.*

2d 357 (*Sup. Ct.* 1941); *Decker v. Schumacker,* 312 *Mich.* 6, 19 *N. W.* 2d 466 (*Sup. Ct.* 1945); *Acunto v. Equitable Life Assurance Society,* 270 *App. Div.* 386, 60 *N. Y. S.* 2d 101 (*App. Div.* 1946); *Lennox v. White,* 133 *W. Va.* 1, 54 *S. E.* 2d 8 (*Sup. Ct.* 1949). See, also, *Hyde v. United States,* 225 *U. S.* 347, 32 *S. Ct.* 793, 56 *L. Ed.* 1114 (1912). Undue stress was laid upon the economic element and the importance of a verdict; agreement to avoid the expense of a retrial of the cause was the dominant consideration, and the result betokens its coercive tendency and effect.

We are of the view that in the interest of essential justice a reversal of the judgment is required notwithstanding the want of a timely objection to the instruction in compliance with *Rule* 3:51–1. The drastic consequences of the judgment as respects both the person and the property of the alleged incompetent forbids the enforcement of this rule. *Rule* 1:2–20(*c*) authorizes notice of "plain errors affecting substantial rights of a party," although not brought to the attention of the trial court. This rule serves where, as here, "substantial justice" has not been done as a result of the erroneous action. *Williamson v. Berger,* 11 *N. J.* 500 (1953); *State v. Greely,* 11 *N. J.* 485 (1953).

The judgment is reversed, and a new trial is awarded.

*For reversal*—Justices HEHER, OLIPHANT, BURLING, JACOBS and BRENNAN—5.

*For affirmance*—Chief Justice VANDERBILT and Justice WACHENFELD—2.