27 N.J. Super. 157 (1953)
99 A.2d 153
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
EDWARD S. McCALL, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued June 15, 1953.
Decided August 13, 1953.
*159 Before Judges GOLDMANN, SMALLEY and SCHETTINO.
Mr. H. Russell Morss, Jr., Prosecutor of Union County, argued the cause for plaintiff-respondent.
*160 Mr. J. Leroy Jordan argued the cause for the defendant-appellant.
The opinion of the court was delivered by SMALLEY, J.S.C. (temporarily assigned).
This is an appeal from a conviction under an accusation charging the defendant-appellant, Edward S. McCall, hereinafter referred to as "defendant," as an habitual criminal in accordance with the provisions of N.J.S. 2A:85-12.
On October 9, 1952 the defendant was convicted for a violation of N.J.S. 2A:94-1 (breaking and entering) arising out of charges contained in Indictment 257, Union County grand inquest, May stated session, 1951.
On October 16, 1952, the Prosecutor of the Pleas of Union County filed accusation 1-H-A in two counts charging the defendant with being an habitual criminal, in that previous to the conviction of October 9, 1952 the defendant had been convicted on "three separate occasions" of crimes which are high misdemeanors under the laws of this State. The pertinent part of the accusation (1-H-A) is as follows:

"Occasion No. 1.
On the 13th day of November, 1941, in the Union County Court of Common Pleas and Quarter Sessions, sitting as the Union County Court of Special Sessions, the said defendant was convicted of the crime of Forgery upon the following allegation:
Allegation No. 103, May Term, 1941, for a violation of R.S. 2:132-1 (Forgery);

Occasion No. 2.
On the 29th day of July, 1943, in the Union County Court of Common Pleas and Quarter Sessions, the said defendant was convicted of the crime of Burglary upon the following allegations:
Allegation No. 36, May Term, 1943, for a violation of R.S. 2:115-1 (Burglary; breaking and entering by night);
Allegation No. 37, May Term, 1943, for a violation of R.S. 2:115-1 (Burglary; breaking and entering by night);
Allegation No. 39, May Term, 1943, for a violation of R.S. 2:115-1 (Burglary; breaking and entering by night);

*161 Occasion No. 3.
On the 26th day of April, 1945, in the Union County Court of Common Pleas and Quarter Sessions, the said defendant was convicted of the crime of Burglary upon the following indictments:
Indictment No. 45, October Term, 1943, for a violation of R.S. 2:115-1 (Burglary; breaking and entering by night);
Indictment No. 46, October Term, 1943, for a violation of R.S. 2:115-1 (Burglary; breaking and entering by night);
Indictment No. 47, October Term, 1943, for a violation of R.S. 2:115-1 (Burglary; breaking and entering by night);
Indictment No. 49, October Term, 1943, for a violation of R.S. 2:115-1 (Burglary; breaking and entering by night).
Wherefore, said defendant is subject to the penalties of N.J.S. 2A:85-8, 9 and 12, against the peace of this State, the government and dignity of the same.

Accusation No. 1-H-A.

Second Count.
Edward Cohn, Esq., Prosecutor of the Pleas of the County of Union further alleges that:
1. On October 9, 1952, the defendant Edward Samuel McCall, also known as Edward S. McCall, also known as Edward McCall, also known as Eddie McCall, was convicted in the County Court of Union County of a high misdemeanor, to wit: Breaking and Entering (N.J.S. 2A:94-1), and is awaiting sentence therefor.
2. Said defendant is an habitual criminal in that, previous to the above conviction, the above described defendant had been convicted on more than three separate occasions, to wit:
Eight separate occasions, all being crimes which are high misdemeanors under the laws of this State, upon which he was sentenced, to wit:

Occasion No. 1.
On the 13th day of November, 1941, in the Union County Court of Common Pleas and Quarter Sessions, sitting as the Union County Court of Special Sessions, the said defendant was convicted of the crime of Forgery upon the following allegation:
Allegation No. 103, May Term, 1941, for a violation of R.S. 2:132-1 (Forgery);

Occasion No. 2.
On the 29th day of July, 1943, in the Union County Court of Common Pleas and Quarter Sessions, sitting as the Union County *162 Court of Special Sessions, the said defendant was convicted of the crime of Burglary upon the following allegation:
Allegation No. 36, May Term, 1943, for a violation of R.S. 2:115-1 (Burglary; breaking and entering by night);

Occasion No. 3.
On the 29th day of July, 1943, in the Union County Court of Common Pleas and Quarter Session, sitting as the Union County Court of Special Sessions, the said defendant was convicted of the crime of Burglary upon the following allegation:
Allegation No. 37, May Term, 1943, for a violation of R.S. 2:115-1 (Burglary; breaking and entering by night).

Occasion No. 4.
On the 29th day of July, 1943, in the Union County Court of Common Pleas and Quarter Sessions, sitting as the Union County Court of Special Sessions, the said defendant was convicted of the crime of Burglary upon the following allegation:
Allegation No. 39, May Term, 1943, for a violation of R.S. 2:115-1 (Burglary; breaking and entering by night);

Occasion No. 5.
On the 26th day of April, 1945, in the Union County Court of Common Pleas and Quarter Sessions, the said defendant was convicted of the crime of Burglary upon the following indictment:
Indictment No. 45, October Term, 1943, for a violation of R.S. 2:115-1 (Burglary; breaking and entering by night);

Accusation No. 1-H-A.

Occasion No. 6.
On the 26th day of April, 1945, in the Union County Court of Common Pleas and Quarter Sessions, the said defendant was convicted of the crime of Burglary upon the following indictment:
Indictment No. 46, October Term, 1943, for a violation of R.S. 2:115-1 (Burglary; breaking and entering by night);

Occasion No. 7.
On the 26th day of April, 1945, in the Union County Court of Common Pleas and Quarter Sessions, the said defendant was convicted of the crime of Burglary upon the following indictment:
Indictment No. 47, October Term, 1943, for a violation of R.S. 2:115-1 (Burglary; breaking and entering by night);

*163 Occasion No. 8.
On the 26th day of April, 1945, in the Union County Court of Common Pleas and Quarter Sessions, the said defendant was convicted of the crime of Burglary upon the following indictment:
Indictment No. 49, October Term, 1943, for a violation of R.S. 2:115-1 (Burglary; breaking and entering by night);
Wherefore, said defendant is subject to the penalties of N.J.S. 2A:85-8, 9 and 12, against the peace of this State, the government and dignity of the same."
Thereafter, on December 2, 1952, the defendant stood trial on the second count, the first count having been abandoned by the State, and on December 3, 1952 a verdict of guilty was rendered. This resulted in a mandatory sentence being imposed upon the defendant on December 19, 1952, committing him to the State Prison for the remainder of his natural life, as was required by N.J.S. 2A:85-12.
During the trial the defendant successfully attacked the record of his 1941 conviction of the crime of forgery, and the trial court granted defendant's motion to void the record of the above mentioned conviction.
At the conclusion of the evidence and summation by counsel the court in its charge, after telling the jury that allegation 103, May term 1941, for violation of R.S. 2:132-1 (forgery), had been stricken, then proceeded to refer in his charge to "occasions" 2 to 8, inclusive, and further stated that the first "occasion" in the second count was to be entirely disregarded by the jury and to further disregard any evidence concerning this particular "occasion," and continued,
"I will instruct the jury that the fact that the defendant was sentenced in some cases on the same day does not constitute a conviction which is not separate."
It appears that the jury then retired, but sought further instruction. Juror No. 10 stated
"I want to know on these accusations and charges where the prisoner was convicted at one time for three or more acts or breaking, entering and committing burglary, whether that constitutes one misdemeanor or four misdemeanors?"
*164 The court replied,
"That is determined by the statute which says, `A conviction of two or more of such crimes or high misdemeanors charged in one indictment or accusation or in two or more indictments or accusations consolidated for trial shall be deemed to be only one conviction."
The prosecutor then remarked that there was no evidence of any accusations being consolidated and the court answered,
"I have already told the jury that if this defendant pleaded guilty or non vult to separate accusations or indictments, the fact that those pleas were taken on the same day or at the same court session on that day would not prevent them from being separate occasions within the meaning of the statute. I have already said that. If there is nothing further, the jury can retire."
At 5:30 P.M., the court received a note from the jury stating, "We cannot agree. What procedure is followed." The following colloquy occurred:
"The Court: * * * Do I understand that the jury reports a disagreement?
Mr. Ali (No. 1): Yes, that's right.
The Court: Is that the report of the jury?
Mrs. Glacken (No. 10): I understand the question was what would happen to the defendant, if we didn't agree.
The Court: Do I understand that the jury is reporting that they cannot agree on a verdict?
Mr. Ali (No. 1); No, our question was what would happen to the defendant if we didn't reach a unanimous agreement?
The Court: If the jury cannot reach an agreement, do you report a disagreement?
Mr. Ali (No. 1): Yes, sir, at this time we report a disagreement.
The Court: Is that true?
Mr. Ross (No. 4): I would like one more chance.
Mr. Morss: Sir, will you instruct the jury there will have to be another trial in the event they do not agree?
Mr. Liotta: I don't think that is fair for the Prosecutor to make such a remark.
The Court: The remarks of counsel are stricken out. Let the jury go back and if they cannot agree, in any event, they will be discharged.
Mrs. Glacken (No. 10): Is it an improper question to ask whether or not this man will be retried for the same thing?
*165 The Court: I don't think that has anything to do with this jury. It is not for you to say. If the jury reports they cannot agree we will discharge them from this case.
(At this point the jury again returned to the jury room at 5:45 and 5:50 sent out word they had reached a verdict after which they returned to the courtroom and the Clerk called the roll of the jury.)
The Clerk: Members of the jury, have you agreed upon a verdict?
Mr. Ali (Foreman): Yes, we have.
The Clerk: Who shall say for you, your Foreman?
The Foreman: Yes.
The Clerk: Mr. Foreman, how do you find?
The Foreman: We find the defendant guilty as charged."
Immediately, thereafter, the jury was polled, resulting in a unanimous verdict of guilty.
The initial question to be determined is whether the trial court properly interpreted that part of N.J.S. 2A:85-12, the Habitual Offender Act, which contains the phrase, "convicted on 3 separate occasions." The statute in question is as follows:
"Any person convicted on 3 separate occasions of high misdemeanors in this state, or of crimes under the laws of the United States or any other state or country, which crimes would be high misdemeanors under the laws of this state, or whose convictions for such offenses in this state or under the laws of the United States or any other state or country shall total 3 or more, and who thereafter is convicted of an offense enumerated in this subtitle, is hereby declared to be an habitual criminal, and the court in which such fourth or subsequent conviction is had, shall impose a life sentence in the state prison upon the person so convicted.
"Conviction of 2 or more of such crimes or high misdemeanors charged in 1 indictment or accusation, or in 2 or more indictments or accusations consolidated for trial shall be deemed to be only 1 conviction."
It is the defendant's contention that the term "occasion" includes a plea to one or several indictments on any court day, i.e., as long as the convictions occur on the same day they are to be taken as constituting one occasion. Defendant further claims that the underlying reason for the passage of the Habitual Criminal Act is to protect society from those who have failed to be rehabilitated by confinement, and the *166 Legislature did not contemplate punishing a person as a fourth offender who has not previously been accorded an opportunity for rehabilitation.
First let us note the inherent weakness and conflicts in defendant's positions. The defendant at one point says there must be an opportunity for rehabilitation before we have "separate occasions"; however, in the next breath the defendant admits that a conviction on different days may constitute "separate occasions." Consequently, by defendant's own interpretation if four distinct and separate convictions occur on four separate and consecutive days with concurrent sentences, the defendant would be an habitual criminal within N.J.S. 2A:85-12, and such without any period of rehabilitation. We therefore see that even when applying defendant's interpretation one may be an habitual criminal without having first been given the opportunity of rehabilitation.
The State's position as adopted by the trial court is that the word "occasion" refers to and is synonomous with "conviction," i.e., the number of occasions being equal to and determinable by the number of convictions, subject to that portion of N.J.S. 2A:85-12 which provides exceptions to the latter and is as follows:
"* * * Conviction of 2 or more of such crimes or high misdemeanors charged in 1 indictment or accusation, or in 2 or more indictments or accusations consolidated for trial shall be deemed to be only 1 conviction."
In an analysis of the two conflicting theories we must note that the view propounded by the defendant has been adopted in the majority of jurisdictions. However, the Legislature and not the court is the sole forum to which one's attention must be focused when attempting to change an existing law, while it is the court's responsibility to apply and interpret the law as it existed at the time of this litigation. The applicable law in this matter is N.J.S. 2A:85-12, L. 1951, c. 344.
Although it will be of no solace to the defendant, the statute as it existed in 1951, was recently amended. L. 1953, *167 c. 166, § 3; N.J.S. 2A:85-12. The Legislature, evidently realizing the harshness that might result from an application of the 1951 act, altered the statute so that now a life sentence is no longer mandatory in the situation as it existed in this case, as well in any instance of a fourth offender. The pertinent part of N.J.S. 2A:85-12, as amended, is:
"* * * the court in which such fourth or subsequent conviction is had, may impose upon the person so convicted a sentence in the state prison for any term of years or for life."
In the instant matter it will be helpful to trace the evolution of this legislation from its inception until the enactment of the statute in question as an aide in the interpretation of the statute sub judice.
Although a fundamental principle, it might well be noted that penal statutes are to be strictly construed. See State v. Meinken, 10 N.J. 348 (1952); State v. Gratale Brothers, Inc., 25 N.J. Super. 62 (Cty. Ct. 1953); State v. Brenner, 132 N.J.L. 607 (E. & A. 1945). Also, no rule of strict construction may be used to torture language of a penal statute beyond its meaning or its clear implication. State v. Brenner, supra; Mayor, etc., Alpine Borough v. Brewster, 7 N.J. 42 (1951).
The 1898 act was directed toward second offenders only. The pertinent part is as follows:
"219. Any offender who shall have been sentenced to imprisonment * * *." L. 1898, c. 235, § 219.
Therefore, to come within the purview of this law, the test was whether the defendant had been previously sentenced to imprisonment.
The 1927 act retained the requirements of a prior conviction, a sentence to the New Jersey State Prison, and a serving of that sentence before a criminal was held to be within the intendment of the act. In addition, a new section was added pertaining to third offenders. L. 1927, c. 218, §§ 1, 2. At this time a separate law, L. 1927, c. 263, §§ 1, 2, was *168 enacted regarding fourth offenders. The application of this act also depended upon prior convictions, sentence to the New Jersey State Prison, and a serving of the imposed sentences, but the consequence thereof was not a mandatory life sentence. The pertinent part of that statute is:
"* * * and the court in which such subsequent conviction is had, in imposing sentence, may, in its discretion, impose a life sentence. * * *"
The Revision of 1937 amounted to a substantial incorporation of the language of the 1927 Legislature, regarding second, third, and fourth offenders. R.S. 2:103-7, 8, 9, 10.
The first noteworthy change in language and substance was introduced by the Legislature in 1940. At this juncture the Legislature indicated its intention to broaden the scope of the act and thereby increased the severity of the act. No longer was there any reference to a State Prison sentence as a prerequisite, and in its place we find the pertinent language of R.S. 2:103-10, as amended (L. 1940, c. 219, p. 889, § 3) to be:
"Any person who on three separate occasions has been convicted of high misdemeanors in this State, * * *, or whose convictions for such offenses * * * shall total three or more, and who shall thereafter be convicted of a subsequent offense enumerated in this subtitle, is hereby declared to be an habitual criminal, and the court in which such fourth or subsequent conviction is had, shall impose a life sentence in the State Prison upon the person so convicted. * * *"
Prior to the above act, in order for a person to be subject to the Habitual Criminal Act it was necessary, as stated in the 1927 and 1937 acts, that he should have been:
(a) Three times convicted of enumerated crimes,
(b) Sentenced to the New Jersey State Prison in pursuance thereof,
(c) And to have served such three sentences.
By the 1940 act the only pertinent requirement indicated was that the defendant must have been convicted of high misdemeanors on three separate occasions.
*169 The applicable rule of construction was aptly stated in Nagy v. Ford Motor Co., 6 N.J. 341, 348 (1951), wherein it was said,
"* * * Resort is had to the rule of construction that a change of language in a statute `ordinarily implies a purposeful alteration in substance of the law.'"
Here we find an absence of requirements (b) and (c) of the 1927 and 1937 acts as set out above. Therefore, the only rational conclusion to be reached is that the Legislature now intended to include those who repeatedly violated the criminal statutes, without regard to their having previously been accorded an opportunity for rehabilitation. As further indicative of such a view is the fact that a life sentence under the 1940 act was made mandatory, whereas in the prior statute it was purely discretionary.
In 1951 the Legislature enacted N.J.S. 2A:85-12, which amounted to a re-enactment of R.S. 2:103-10, as amended, with only minor changes, and those relating to transposition of words. It appears that the Legislature, realizing the harshness of its action, exempted certain situations from this act when it provided in part:
"2A:85-12 * * * Conviction of 2 or more of such crimes or high misdemeanors charged in 1 indictment or accusation, or in 2 or more indictments or accusations consolidated for trial shall be deemed to be only 1 conviction."
Certainly if it had so desired the Legislature could have easily excluded from the coverage of the act the situation as it exists in this matter.
With the above-described background we now proceed to substantiate our position by an interpretation of terms involved, namely, "convicted on 3 separate occasions." We agree that the word "occasion," when standing alone, may not be clear in meaning; however, we find that the Legislature explained its meaning when it further stated,
"* * * or whose convictions for such offenses in this state or under the laws of the United States or any other state or country shall total 3 or more, * * *."
*170 Regarding the word "occasion" we find Webster's New International Dictionary (2d ed. 1951) defines it as follows:
"Occasion, n. * * * 1. a favorable opportunity; a timely chance or juncture; * * * 4. a happening occurrence; incident; * * * 6. * * * an exigency."
This precise question does not appear to have been dispositively decided in this jurisdiction. However, it may be helpful to notice the interpretation developed in the case of Commonwealth v. Tsouprakakis, 267 Mass. 496, 166 N.E. 855, 856 (Sup. Jud. Ct. 1929), where the words "three separate occasions" were involved. In that case the defendant, after being arrested on January 29, 1927, furnished bail for himself and his eight co-defendants. The following September the defendant furnished bail for 22 other persons criminally accused. It was found that the defendant became bail or surety, in violation of the statutes involved, on eight separate occasions in January and 22 separate occasions in September 1927. The court then stated as follows:
"The `more than three separate occasions' which are referred to in the statute must be reckoned from the viewpoint of the `bail or surety.' They are `occasions' for `becoming bail or surety.' The word `occasion' may mean only a particular time, but usually, `according to the common and approved usage of the language' (G.L.c. 4, § 6, subd. Third), it has a broader significance. It carries the idea of opportunity, necessity or need or even cause in a limited sense. * * * Even if the same person at the same moment of time becomes `bail or surety' for more than one defendant, he becomes `bail or surety' on more than one `separate occasion.' There is a separate opportunity, necessity and cause for that person to become `bail or surety' for each defendant."
By analogy we note that in the instant matter each allegation or indictment, although disposed of in groups on various days, required a separate and distinct plea; separate and individual determination as to bail or surety; separate trials; separate and distinct determinations as to sentence, and therefore would have been within the Massachusetts rule of, "* * * separate opportunity, necessity and cause. * * *"
A further rule of construction helpful in this matter *171 was stated in State v. Klapprott, 127 N.J.L. 395, 402, 22 A.2d 877, 881 (Sup. Ct. 1941) as follows:
"In construing a statute strictly regard must be had for all its parts as well as its rigid enforcement."
Consequently, when referring to the preceding sections of the same statute we find language which is clear and unambiguous in form. N.J.S. 2A:85-8 states:
"Any person convicted of a high misdemeanor * * *."
N.J.S. 2A:85-9 also states:
"Any person twice convicted of high misdemeanors * * *."
It is evident that the only requirement, as evinced by the latter sections, is that of convictions, and such is not limited by the time on which they occur.
Let us now examine the meaning accorded the word "conviction" as used in this State. It was indicated in the case of State v. Williams, 89 N.J.L. 234, 237, 238 (E. & A. 1916), that a conviction was complete when a jury had returned a proper verdict. State v. Addy, 43 N.J.L. 113 (Sup. Ct. 1881), has been cited as authority for the view that the defendant is deemed to be convicted prior to imposition of sentence. In the case of State v. Byra, 128 N.J.L. 429, 432 (Sup. Ct. 1942), Justice Parker speaking for the court said,
"* * * We consider the law in this State to be as stated in Section 1062 of volume 1, Bishop's New Criminal Law, viz., `a first count may set out the breaking and entering with intent to steal, and a second may allege the larceny as a separate thing, and thereon the defendant may be convicted and sentenced for both.'"
Such in our opinion further indicates that the words "conviction" and "sentence" are used in a mutually exclusive manner. It is also clear that the Legislature intended that *172 a person should be deemed convicted, even though a suspended sentence is imposed. R.S. 2:199-3; N.J.S. 2A:168-3.
While defendant challenges the constitutionality of N.J.S. 2A:85-12, asserting that it fails to fulfill the requirements of both the Federal and State Constitutions with reference to certainty and particularity, we are of the opinion that in view of our determination regarding the interpretation and soundness of the statute in question, that there can be no serious doubt as to its constitutionality. In fact, it is worthy of note that the constitutionality of this statute has been reviewed and upheld in numerous instances, although the particular point had never been raised before. See In re Caruso, 10 N.J. 184, 188-190 (1952); State v. Janiec, 20 N.J. Super. 471 (App. Div. 1952). In re Zee, 13 N.J. Super. 312 (Cty. Ct. 1951), affirmed 16 N.J. Super. 171 (App. Div. 1951).
A further matter raised by the defendant is the fact that the verdict was a matter of coercion, resulting from the prosecutor's statement,
"Mr. Morss: Sir, will you instruct the jury there will have to be another trial in the event they do not agree?"
Defendant claims that immediately thereafter at 5:45 P.M. the jury retired and at 5:50 P.M. they returned with the verdict of guilty. It is defendant's contention that the verdict could not have been the result of deliberation in view of the fact that they were only out five minutes. It is claimed by the defendant that the case of In re Stern, 11 N.J. 584 (1953), is dispositive of this matter. However, we note here factors distinguishing the two cases. In the Stern case it was the court who urged the jury to reach a verdict on the ground,
"* * * It costs a lot of money to the state to maintain the court, and if you cannot arrive at a verdict it means that it will probably have to be retried which will take several days. * * *"
*173 The court in reversing stated:
"The jury retired and promptly returned with a verdict * * * so quickly, in fact, as to preclude the inference of renewed deliberation. * * *"
However, in the case sub judice we note that subsequent to the prosecutor's statement and the objection by counsel for defendant, the trial court stated:
"The remarks of counsel are stricken out. Let the jury go back and if they cannot agree, in any event, they will be discharged."
We find that the verdict was proper and not the result of coercion.
Judgment affirmed.
SCHETTINO, J.S.C. (temporarily assigned) (dissenting).
The argument in this case embraced the question whether conviction must precede the commission of the offense for which enhanced punishment may be imposed under the habitual offender statute. The position of the State is that the time sequence contemplated by the statute relates solely to the convictions themselves, without regard to the time relationship of the final offense to the required prior convictions. Thus, for example, the State contends that if a man, with no prior convictions, should commit four offenses within the reach of the statute, he would be punishable as an habitual offender upon the fourth conviction, unless the prosecution joined the charges in a single indictment or they were consolidated for trial. Since the statute, prior to the amendment of 1953 (L. 1953, c. 166), made it the duty of the prosecutor to initiate proceedings for increased punishment and apparently made it equally mandatory that a life sentence be imposed, the State's position, if correct, would impart to the statute a harshness which I would not find unless the language plainly foreclosed another view.
I had thought that statutes of this kind contemplated a life sentence for an offender who had demonstrated that *174 previous convictions had had no corrective influence. The State concedes that most jurisdictions so construe their statutes, although, of course, their individual phrasing must be considered. Pertinent cases are collected in 58 A.L.R. 20, 41; 116 A.L.R. 209, 221; 5 A.L.R. 2d 1080, 1082, footnotes 3 and 4; 24 A.L.R. 2d 1247. I would have no doubt that R.S. 2:103-10, both in its initial form and as amended in 1940, would have to be construed in harmony with that view, because the offense was there explicitly required to be "a subsequent offense," and "subsequent," I believe, was used to express a relationship to the prior convictions rather than to the prior offenses themselves. But cf. State v. McCormick, 104 N.J.L. 288 (Sup. Ct. 1928).
The majority opinion finds a different purpose in the 1940 statute because it omitted the requirement for sentence and service of sentence which the Revision of 1937 and its source, the 1927 statute, had contained. I see no compelling effect in that deletion. It is equally consistent with the thought that the Legislature deemed prior conviction to suffice whether or not sentence was imposed or executed. My difficulty arises with the 1951 revision of Title 2, because in N.J.S. 2A:85-12 the final offense is not there modified by the adjective "subsequent," and hence admits of the interpretation which the State advances. It should be noted that the 1951 revision continues to describe the conviction as "fourth or subsequent conviction," as did the earlier statute. I am not prepared to say that the revision of 1951 was intended to accomplish a departure from the philosophy of reformation which generally underlies statutes of this kind. If that legislative purpose persisted, the literal sense of the words used would not preclude a construction giving effect to the true intent. Fischer v. Fischer, 12 N.J. 246 (1953); Wene v. Meyner, 13 N.J. 185 (1953).
I do not, however, think that issue is necessarily involved in this case. The convictions here relied upon did antedate the offense for which the life sentence was imposed. The question actually presented is whether the required number of prior convictions was shown. The second count of the *175 accusation charges a conviction on November 13, 1941; three convictions on July 29, 1943; and four convictions on April 26, 1945. The first conviction was eliminated by the trial court. The convictions of July 29, 1943, were for burglary, but the offenses were not joined in a single indictment or consolidated. The same observation applies to the convictions of April 26, 1945. The State contends that since the offenses were thus separately charged and dealt with, the convictions were seven in number notwithstanding the convictions occurred on but two dates.
The majority opinion gives controlling effect to the concluding sentence of N.J.S. 2A:85-12:
"Conviction of 2 or more of such crimes or high misdemeanors charged in 1 indictment or accusation, or in 2 or more indictments or accusations consolidated for trial shall be deemed to be only 1 conviction."
It seems to me that this interpretation fails to give effect to the words "Any person convicted on 3 separate occasions" which open the section. The sentence upon which the majority opinion bottoms its result appears as well in N.J.S. 2A:85-8, which deals with second offenses and N.J.S. 2A:85-9 which deals with third offenses. Those sections begin respectively with the words "Any person convicted" and "Any person twice convicted." Neither section refers to "occasions." The difference in terminology must have some significance. If the Legislature intended that three convictions satisfying the definition of the concluding sentence should suffice, N.J.S. 2A:85-12 would have paralleled the cited preceding sections in phraseology and would have described the person as "Any person thrice convicted." The concluding sentence of each of the sections in effect defines the word "convicted," and it seems to me that language which, in the preceding two sections referred to, serves merely to define the word "convicted," cannot be said to define as well the words "separate occasions" which appear only in the section here involved. To put it another way, the words "separate occasions," which appear only in N.J.S. 2A:85-12, *176 must have been intended to require either something more or something less than would have been requisite in their absence, and keeping in mind the severity of the sentence provided, I must conclude that something additional was contemplated.
If possible, meaningful effect should be given to all language in a statute. I think, as stated, the majority opinion fails to give effect to the striking addition in N.J.S. 2A:85-12 of the requirement of "separate occasions." It is common practice to assemble pending charges against a prisoner and to dispose of them upon a single day. I believe the legislative design was to consider such disposition as a single event for the purpose of that section, whether or not the charges were contained in a single indictment or accusation and whether or not the several indictments or accusations were consolidated. Perhaps it may be said that this construction fails to give effect to the concluding sentence of the section in that the definition of a conviction therein set forth ceases to have any significant role. I am not sure whether that criticism would be accurate, but if it should be that we are faced with the alternatives of giving effect to "separate occasions" or denying it any efficacy; we should take the path consonant with the rule of strict construction of penal statutes.
The majority opinion construes "occasion" to equal the event of conviction and cites in support Commonwealth v. Tsourprakakis, 267 Mass. 496, 166 N.E. 855 (Sup. Jud. Ct. 1929). The issue there was the meaning of the word in relation to the subject of furnishing bail bonds, and it was held that the word referred to each bail furnished.
The word "occasion" is not a word of art. Its meaning is flexible, and there is no settled usage of it in the law which would confine it to a single meaning in all settings. It is a word which draws significance from the context in which it is used. In reference to bail bonds and sufficiency of surety, the word quite logically relates to each act of bonding. But in the setting in which it is here used, the word does not imperatively point to the conviction as distinguished from *177 the date upon which convictions occur. That it does not refer to the event of conviction seems clear to me because, as stated above, the word "conviction" is defined in the concluding sentence of the section in question and the preceding sections cited, and hence the introduction of "separate occasions" in the section here involved indicates that "occasions" refers to something beyond the event of conviction. I believe, accordingly, that several events of conviction upon a single day constitute conviction upon one separate occasion, and there having been but two separate occasions established, I would set aside the sentence as illegal.