NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R.1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-5682-14T2

SCOTT JONES,

 Plaintiff-Appellant,

v.

SOUTH JERSEY INDUSTRIES, INC.
d/b/a SOUTH JERSEY GAS COMPANY,

 Defendant-Respondent.

 Submitted May 10, 2017 – Decided July 21, 2017

 Before Judges Alvarez and Manahan.

 On appeal from the Superior Court of New
 Jersey, Law Division, Cape May County, Docket
 No. L-15354-06.

 Obermayer Rebmann Maxwell & Hippel LLP,
 attorneys for appellant (Gregory D. Saputelli,
 Matthew A. Green, and Stephen H. Barrett, on
 the briefs).

 Jasinski, P.C., attorneys for respondent
 (David F. Jasinski, of counsel and on the
 brief; John C. Hegarty, Jennifer C. Van
 Syckle, and Rebecca D. Winkelstein, on the
 brief).

PER CURIAM
 Plaintiff Scott Jones appeals a jury's March 27, 2015 verdict

in favor of defendant South Jersey Industries, Inc., doing business

as South Jersey Gas Company. He contends that the jury

instructions, and the manner in which deliberations were

scheduled, were fatally flawed and warrant reversal. We disagree,

and thus affirm.

 The underlying action arises from defendant's termination of

plaintiff, a long-term employee, and sought damages under the New

Jersey Law Against Discrimination (LAD), N.J.S.A. 10:5-1 to 49.

The retrial1 extended over the course of six days. Including jury

selection, the matter was scheduled over nearly two months from

beginning to end.

 Starting the first day of jury selection, the trial judge

warned the jury to expect a lengthy trial, but also told them they

would not be asked to come in on a Friday. At the close of the

case, the judge charged the jury after extensive discussion with

counsel. His closing instruction included Civil Model Jury Charge

1.20, which states: "[i]t is your duty as jurors to consult with

one another and to deliberate with the view to reaching an

1
 In Jones v. South Jersey Industries, Inc., No. A-3175-09 (App.
Div. Aug. 30, 2011), we vacated the original jury's verdict and
remanded for a new trial.

 2 A-5682-14T2
agreement if you can do so without compromising your own individual

judgment."

 Shortly after jury deliberations began the morning of March

25, 2015, the jury asked its first question, requesting a

definition for the term "preponderance of the evidence." While

the judge was addressing this with counsel, the jurors asked three

additional questions, including a request for a definition of the

term "disability." After a lengthy discussion with counsel, the

judge reread the model charge defining both terms. Later that

afternoon, plaintiff's counsel asked that the jury be given the

charges in writing. The judge agreed, and the following morning

before deliberations resumed, the jury was given written copies

of the instructions, including Model Jury Charge 1.20.

 On Thursday, March 26 at 1:42 p.m., the jury asked, "What

happens if we cannot get question number one? We're stuck at four

and four, please advise." The judge proposed, and counsel agreed,

to advise the jury that it needed to "keep deliberating until they

have at least an agreement of seven people as to the first

question[.]" The judge told the jury:

 I have your question. I have discussed
 the question with the attorneys, and the, the
 short answer to your question is . . . the
 instruction that . . . you continue to
 deliberate until at least seven of you have
 agreed upon an answer. In the event that
 seven, [] because your vote either has to be

 3 A-5682-14T2
eight to zero or seven to one. I'm using
seven to one as an example only because you're
at four and four. So you have to continue
deliberating, going over the evidence,
discussing with your fellow jurors your
various positions and what you think the
evidence showed in order to come to a decision
on that question. If the answer to that
question leads you to question two, my
instructions for question two are the same.
If the answer to that question doesn't lead
you to question two, then you'll let us know
that.

 Let me say this before I ask you to return
to go back in to deliberate. I don't want my
reaction or the attorneys' reaction to
anything or any question that you have to seem
in any way or to understate in any way how
much appreciation we have for what you guys
are doing right now. This hasn't been easy
for anybody, not the least of which are you
who just happen to be the people who got
selected. And while I understand that we're
in our seventh week and none of the weeks were
what I would consider to be easy for any of
you, we had delays because of my judicial
education, we had weather delays, we had
closings, we've had a lot of things that have
happened, and none of us are taking any of
those things for granted, and they are all
factored in in terms of our appreciation of
what you're doing.

 Having said that – and, again, I don't
mean to underestimate your involvement in any
way – but your involvement started seven weeks
ago and for the rest of the room, and I'm not
counting myself in this, this process started
years ago, and the end of the process is where
we are right now. And the rules that we have
for deliberation, while – while simple by
definition, not simple in terms of practice,
meaning you guys have to live with the fact
that at least the conversation needs to

 4 A-5682-14T2
 continue until at least seven of you have
 agreed upon the answer to any question. It
 happens to be here your focus is still on
 question one. So while my instruction, or my
 answer to your question is a relatively simple
 one, that you have to deliberat[e] until at
 least seven of you agree as to an answer, we
 understand, I understand that that is by no
 means a simple task, or even simple news to
 hear. But, nonetheless, that is the only real
 instruction that I can give to you at this
 point, and with as much appreciation as I can
 try and express.

 So with that, I'm going to ask that you
 return to the jury deliberation room, resume
 your deliberations with that response in mind.
 And thank you.

 At 3:45 p.m., the judge advised counsel that he would dismiss

the jury for the day since one juror had "child pick-up issues."

When the jury was returned to the courtroom, the judge "ask[ed]

that [the jury] be here ready to resume [] deliberations at 9 a.m.

tomorrow morning, [Friday,] with the same instructions as usual."

The jury was then excused.

 Shortly thereafter, the judge told counsel that one of the

jurors had a "problem" with Friday. He added that the court

attendant was "going to go find out more about that and then let

[him] know." The following colloquy took place when the court

attendant returned:

 The Court: [Court attendant,] was there any
 additional information from our juror who said
 he had qu-

 5 A-5682-14T2
 Court Attendant: All he said was, "I can't
 make it tomorrow." When he went by me when I
 took him out downstairs he never said anything
 else other than that when he –
 The Court: After I told him to come in
 tomorrow?

 Court Attendant: Yes.

 The Court: Okay.

Thereafter, defense counsel questioned the fairness of instructing

that the jury come in on Friday when throughout the trial, they

had understood they would not have to appear on Fridays.

 [DEFENSE COUNSEL]: You know, Judge, I want –
 The jurors knew that Friday was not a . . .
 jury day.

 THE COURT: Well, I mean, yes, but they also
 knew that they weren't going to be here past
 March 19[].

 [DEFENSE COUNSEL]: Agreed.

 . . . .

 THE COURT: - that's obviously not the case.

 [DEFENSE COUNSEL]: But we didn't even ask them
 whether or not they could come in tomorrow.

 THE COURT: I know.

 [DEFENSE COUNSEL]: We just assume that . . .
 they could come in. So I, -

 . . . .

 THE COURT: - I don't agree with that
 characterization of it because -

 [DEFENSE COUNSEL]: Well –

 6 A-5682-14T2
 THE COURT: I get updates from Jury Management
 that you don't get. But I take, I take your
 point that we didn't address them on the
 record to say can everyone be here tomorrow.

 [DEFENSE COUNSEL]: No, we didn't, and it is –
 I think it's unfair at this point in time to
 have – just say, okay, one juror is not going
 to be here tomorrow.

 THE COURT: Well, no one is saying that.

 [DEFENSE COUNSEL]: Well, I'm presuming that
 one juror is not going to be here tomorrow.

 THE COURT: Okay. Well, we'll know that
 tomorrow.

The judge acknowledged that the jury had not been asked to come

in on Fridays except for one Friday in February to which they had

agreed in open court. He then asked defense counsel what the

solution would be, to which defense counsel responded:

 Well, my solution is I think that it
 should have been handled in a different way.
 If they, if we had asked the jurors whether
 or not they could have made it and one said I
 absolutely couldn't have made it, could have
 been brought back on Monday, you know, with,
 with regards to this. I mean I think at this
 point in time where we're at and at the, you
 know, the critical, you know, juncture that
 we're, where we're at with regard to
 deliberations that these jurors have been
 deliberating now for, you know, ten hours,
 twelve hours, I don't know the math, and for
 one juror to just announce that he's not
 coming in tomorrow, that he can't make it, I
 frankly think that it is, that's it's unfair.
 I think it's unjust with regards to, to
 prejudice. I think both sides are prejudiced
 with regards to it.

 7 A-5682-14T2
The judge said that if the juror did not appear the following day

despite being told to do so, he would "deal with it."

 The following day, Friday, March 27, all the jurors appeared

and resumed deliberations. The jury's verdict, framed by the

questions on the jury verdict sheet, found that plaintiff had not

proven by a preponderance of the evidence that he was suffering

from a disability prior to the termination of his employment. The

vote was unanimous. The jury also unanimously found that plaintiff

had not proven by a preponderance of the evidence that his employer

perceived him to have a disability. Plaintiff alleges the jury

deliberated no more than half an hour on the morning of March 27

before rendering its verdict. As plaintiff's counsel left the

building, she saw juror number four standing in a hallway being

comforted by another juror.

 In rendering his decision denying plaintiff's application for

a new trial, the judge observed that the jury in this case had

asked thirty-six questions during the testimony, four during

deliberations, and that "[t]his was not a jury whose members were

intimidated or reluctant to ask for further guidance." He

reiterated that although he did not repeat to the jury, following

the jury questions, that they should not "surrender [their]

conscientious scruples or personal convictions[,]" that he had

 8 A-5682-14T2
earlier so advised them and provided that instruction in the

written charge. The jury at no time informed him that they were

unable to reach a verdict, had not yet reached any "mandatory

questions," nor did the court pressure them to render a verdict

by, for example, improperly reminding them of the expense of a

trial. He also mentioned that neither the attorneys nor he

"believed that the jury was at a point where it was 'unable to

reach a verdict'[.]"

 The judge also observed that no objection was made by either

party to the charge, and that in addition to the juror seen crying

by counsel on the way out of the courthouse, he and court staff

observed members of the jury crying as they were "saying goodbye

but those tears were accompanied with the jurors reflecting on the

relationships developed over their service in a positive joyful

manner." In the judge's opinion, the jurors were merely expressing

the emotion attendant to having spent seven weeks in trial, and

having grown close during that time. He concluded by noting that

had the jury felt coerced, they would have returned a verdict on

March 26 by the end of the day, as opposed to having resumed

deliberations the following morning. The judge further noted that

the jury voted unanimously on the only two questions they were

required to answer in order to reach their verdict.

 9 A-5682-14T2
 In the judge's opinion, the verdict was supported by

sufficient evidence in the record. The jury heard from experts

whose opinions they could, at its option, accept or reject. He

concluded that the jury reasonably reached its decision that

plaintiff had not established that his employer was aware of his

alleged disability.

 Plaintiff raises two points on appeal:

 [POINT I]

 THE COURT'S SUPPLEMENTAL JURY INSTRUCTIONS AND
 DIRECTIONS HAD AN INHERENTLY COERCIVE EFFECT
 ON THE JURY AND CREATED THE RISK, OR CAPACITY,
 OF BEING OPPRESSIVE, AND RESULTING IN A
 VERDICT BASED ON EXTRANEOUS FACTORS.

 [A.] Requiring the Jury to Come to Court
 on Friday to Deliberate Substantially
 Increased the Inherent Coercive Effect of
 the Court['s] Instructions.

 [POINT II]

 FAILURE OF COUNSEL TO OBJECT TO A SUPPLEMENTAL
 INSTRUCTION SUCH AS THE ONE GIVEN IN THE
 INSTANT CASE IS OF NO CONSEQUENCE, SINCE THE
 INSTRUCTION CONSTITUTED "PLAIN ERROR."

 I.

 The trial court's ruling on a motion for a new trial "shall

not be reversed unless it clearly appears that there was a

miscarriage of justice under the law." R. 2:10-1. "That inquiry

requires employing a standard of review substantially similar to

that used at the trial level, except that the appellate court must

 10 A-5682-14T2
afford 'due deference' to the trial court's 'feel of the case,'

with regard to the assessment of intangibles, such as witness

credibility." Jastram v. Kruse, 197 N.J. 216, 230 (2008) (quoting

Feldman v. Lederle Labs., 97 N.J. 429, 463 (1984)).

 Since plaintiff did not object to the supplemental jury

instruction, we review this claim of error employing the plain

error standard of review:

 Any error or omission shall be disregarded by
 the appellate court unless it is of such a
 nature as to have been clearly capable of
 producing an unjust result, but the appellate
 court may, in the interest of justice, notice
 plain error not brought to the attention of
 the trial or appellate court.

 [R. 2:10-2.]

 "Relief under the plain error rule, [Rule] 2:10-2, at least

in civil cases, is discretionary and 'should be sparingly

employed.'" Baker v. Nat'l State Bank, 161 N.J. 220, 226 (1999)

(quoting Ford v. Reichert, 23 N.J. 429, 435 (1957)). The error

must be "sufficiently grievous to justify notice by the reviewing

court and to convince the court that of itself the error possessed

a clear capacity to bring about an unjust result." Mason v.

Sportsman's Pub, 305 N.J. Super. 482, 495 (App. Div. 1997)

(citation omitted).

 Courts have held that the failure to provide "clear and

correct jury charges" can constitute plain error. Das v. Thani,

 11 A-5682-14T2
171 N.J. 518, 527 (2002). As we allowed in plaintiff's prior

appeal, "[j]ury charges 'must outline the function of the jury,

set forth the issues, correctly state the applicable law in

understandable language, and plainly spell out how the jury should

apply the legal principles to the facts as it may find them [.]"

Velazquez v. Portadin, 163 N.J. 677, 688 (2000) (quoting Jurman

v. Samuel Braen, Inc., 47 N.J. 586, 591-92 (1966)).

 The contention that the combination of the instructions and

the jury's service on a Friday had a coercive effect is belied by

the record. First, although the judge may have overlooked the

language regarding the fact jurors should not surrender their

personal convictions in order to reach a verdict, the jury had the

full written instruction during deliberations, and had been

previously told not to do so. Additionally, we cannot but agree

with the judge that this was a very active jury who through their

questioning demonstrated a comfort level in the process. The

cases plaintiff cited involve judges who mention the cost of a

jury during the course of instructing a jury to continue to

deliberate to reach agreement (In re Stern, 11 N.J. 584, 586-87

(1953)), or being told by a judge that since he had "nothing going"

over the weekend, that he would keep the jury deliberating as long

as it took them to reach a verdict, (State v. Figueroa, 190 N.J.

219, 227 (2007)), or being told that, in addition to a trial being

 12 A-5682-14T2
an expensive proposition, that they would be kept "a while" because

a judge "want[ed] a verdict." (Rosetti v. Pub. Serv. Coordinated

Transp., 53 N.J. Super. 293, 296 (1958)).

 The judge's instruction in this case, which we earlier quoted

at some length, was designed only to assure the jury that their

services were appreciated, to apologize for the closings and other

unexpected difficulties that delayed the process of the trial, but

in no fashion was it coercive. The judge reinstructed the jury,

and they returned to the jury room to continue deliberations.

Neither counsel objected to the instruction. It was plaintiff's

attorney who requested that the instructions be given to the jury

in writing. This is not an instance in which relief under the

plain error rule is warranted, as no error occurred. See Baker,

supra, 161 N.J. at 226.

 We add that the timeline in this case counters the suggestion

that the jury would have felt coerced. The judge instructed the

jury on March 26, early in the afternoon, after they had eaten

lunch. They continued to deliberate for two hours, were excused

for the day, and returned the following morning. Thus, we are

satisfied that no miscarriage of justice under the law has

occurred.

 Affirmed.

 13 A-5682-14T2