JOHN ACUNTO, Respondent, *v.* EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES, Appellant.

First Department, February 21, 1946.

*Eugene T. O'Neill* of counsel (*Leo D. Fitzgerald*, attorney), for appellant.

*Abraham Gruber* of counsel (*Mortimer Scope* with him on the brief; *Charles Fredericks*, attorney), for respondent.

TOWNLEY, J. This action was brought to recover benefits provided by disability clauses included in two policies of life insurance issued by the defendant to plaintiff. The benefits included monthly payments in the event of permanent disability.

The record presents the third trial of this case. After the jury had retired, they reported that they could not agree. At that point the justice presiding gave the following additional instructions: " * * * Each juror should listen with a disposition to be convinced to each other's arguments, and if a much larger number were for one side, the dissenting jurors should consider whether their doubts on the case were such as should be entertained by reasonable men and women inasmuch as they make no impression upon the minds of so many other men and women equally honest and equally intelligent with themselves. The minority should ask themselves whether they might not reasonably doubt the correctness of their stand which is not concurred in by a great majority, if that is the case with this jury. * * *."

Thereafter the jury left the jurybox at 6:08 P.M., filed upstairs to the juryroom, came back downstairs to the jurybox and returned a verdict for the plaintiff at 6:12 P.M., a lapse of approximately four minutes. It was not a unanimous verdict, two jurors having dissented.

The above charge is criticized as being in effect a direction to the minority to agree with what was obviously less than the statutory majority of the jurors. That this was the effect may reasonably be inferred from the fact that although unable to agree up to that time, they thereafter returned a verdict in a matter of a few minutes.

The charge given is in accordance with a charge approved by the Supreme Court of the United States in *Allen* v. *United States* (164 U. S. 492, 501). The charge in the *Allen* case in

its turn was founded on a similar charge given in a Massachusetts court in 1851 (*Commonwealth* v. *Tuey*, 8 Cush. [Mass.] 1). No case exactly in point in the State of New York has been drawn to our attention.

There is no unanimity in regard to the propriety of such a charge as this throughout the various States of the United States. The majority rule is to the contrary of the Federal rule as stated in the *Allen* case.

The decision of this appeal should be determined on the basis of general views of policy, as to what is desirable advice to be given in the case of jurors who seem to be unable to come to a decision.

As was said in *Mt. Hamill St. Sav. Bank* v. *Hughes* (196 Iowa 861, 864): "The complaint is that the foregoing tended to coerce the minority jurors into an acquiescence with the majority. Manifestly, its clear implication was that the majority view was more worthy of consideration than that of the minority. In other words, it was an implied invitation to the acceptance of a majority verdict.

"This feature of the instruction has been repeatedly disapproved by us."

Similarly, the Supreme Court of Kansas in *Neely* v. *Travelers Ins. Co.* (141 Kan. 691, 696) said: "The lone juror, or small minority of jurors, possessing courage to obey the juryman's oath and to withstand dragooning, is the bulwark in the jury system against mob verdicts."

In *Eikmeier* v. *Bennett* (143 Kan. 888, 896) it was likewise stated: "The only purpose in giving such an instruction as we have under consideration is to coerce the jury to agree, otherwise there would be no point in giving it. * * * To say to a minority that they should re-examine their views in the light of the opinion held by the majority, without putting a like duty on the majority respecting the opinion of the minority, is wrong. The minority may be right and the majority wrong. Until the Legislature provides for verdicts by a definite majority of the jury, the court, by additional instruction, should not suggest; even faintly, that the opinion of the minority is to be controlled by that of the majority." To the same effect, see *Mead* v. *Richland Center* (237 Wis. 537).

While the Trial Justice correctly instructed the jury on the general subject of the attitude of the jurors toward each other and the desirability that no one should surrender settled convictions on what the truth is and what justice may be on the facts and the law, still we think this general instruction was

not enough to overcome what we deem to be the prejudicial effect of the part of the charge excepted to.

The judgment appealed from should be reversed and a new trial ordered, with costs to the appellant to abide the event.

COHN, J. (dissenting). This case has been tried on two previous occasions and each time the jury has disagreed. The record before us shows that the present trial lasted for a week. When, after deliberating for only two hours, the jury reported that it was hopelessly deadlocked, it was entirely proper and commendable for the court to endeavor by all legitimate means to secure a verdict by urging the jury to agree. (*Conners* v. *Walsh*, 131 N. Y. 590, 592–593; *White* v. *Calder*, 35 N. Y. 183, 184; *Green* v. *Telfair*, 11 How. Pr. 260, 262; 4 Carmody on New York Pleading and Practice, § 1333, p. 3091; Abbott on Civil Jury Trials [5th ed.], § 392, p. 894.)

The claim of defendant that the further instruction given by the trial court constituted coercion of the jury is without merit. An examination of this instruction demonstrates that the court's sole desire was to assist the jury in arriving at a just verdict upon the evidence without any attempt at coercion. The court charged: " It is eminently desirable now that if you reasonably can you should agree upon a verdict. By that I do not mean to commend to any of you that you should surrender settled convictions of what the truth is and of what justice may be on the facts and the law; but I do mean to commend to you most earnestly that you pool all your resources of recollection as to the evidence and your capacity for judgment and exercise a common will to do justice between these litigants to the end that this cause shall be finally adjudicated by your verdict.

" Now, you began your deliberations at four o'clock. It is now exactly four minutes past six.

" I wish further to call to your attention that in a large proportion of cases, absolute certainty cannot be expected; that, although the verdict must be the verdict of each individual juror and not a mere acquiescence in the conclusion of his fellows, yet they should examine the question submitted with candor and with a proper regard and deference to the opinions of each other. It is the duty of each juror to decide and the duty of the jury collectively to decide the case if they can conscientiously do so. *  *  *.''

Then followed the portion quoted in the prevailing opinion.

At the conclusion of these instructions defendant's counsel merely said: " I'd like to have my exception noted on the record to that addition to your charge."

Though the portion of the additional charge now made the basis for a reversal, taken by itself, might be construed as an exhortation to the minority group in the jury to agree with the majority, I find therein no ground for setting aside the judgment as no proper exception was taken by defendant to the language employed. Had defendant specifically called attention to the particular language now challenged and had he stated to the trial court that such instruction constituted a command to the minority to re-examine its views in the light of the opinion held by the majority, it is reasonable to assume that the Trial Judge would have corrected his remarks by adding that a like duty was placed on the majority respecting the opinion of the minority.

Defendant's failure to specify its objection to the precise portion of the charge which it believed to be erroneous makes the exception valueless. An exception to a charge of the court must point out the specific part of the charge deemed wrong so that the court may have an opportunity to correct the error, if error was committed. (*Clark* v. *N. Y. C. & H. R. R. R. Co.*, 191 N. Y. 416, 422–423; *McGinley* v. *United States Life Ins. Co.*, 77 N. Y. 495, 497; Branson on Instructions to Juries [2d ed.], § 138, p. 229; 4 Carmody on New York Pleading and Practice, § 1327, pp. 3080–3081.)

By merely taking a general exception to the supplemental charge which consisted of three long paragraphs, the defendant has placed itself in a position of gambling with the jury's verdict and still reserving the right, in the event of an unfavorable verdict, to specify the nature of its exception in the appellate tribunal. The trial court is the forum in which the exception should have been amplified in the first instance.

For the foregoing reasons I dissent and vote to affirm.

MARTIN, P. J., and DORE, J., concur with TOWNLEY, J.; COHN, J., dissents in an opinion in which GLENNON, J., concurs.

Judgment reversed and a new trial ordered, with costs to the appellant to abide the event.