■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v. PHILIP ALBANESE, Appellant.

APPEAL from a judgment of the Supreme Court, County of New York, rendered March 4, 1966, upon a verdict convicting defendant of the crimes of grand larceny in the first degree and assault in the second degree.

MEMORANDUM BY THE COURT. Judgment of conviction, rendered on March 4, 1966, convicting defendant, after trial, of the crimes of grand larceny in the first degree and assault in the second degree, reversed on the law and new trial ordered.

Following the court's charge, the case was given to the jury at 10:57 A.M. on January 21, 1966 and a guilty verdict was returned at 1:25 A.M. on January 22, 1966.

At 10:30 P.M., after having deliberated all day, with the exception of time out for lunch, the foreman sent a note to the court reading as follows: "The jury is hopelessly deadlocked 11 to 1. This vote has not changed since 1:00 P.M. This is over nine hours."

After this note was received the jury returned to the courtroom and the court, in part, charged as follows:

"A juror should not be stubborn. A juror should not try to be a hero. A juror should reason with his fellow jurors. A juror should permit himself to be reasoned with.

"I don't know how you stand. \* \* \* All I know is that it is 11 to 1. \* \* \* Permit yourself to be reasoned with. Be reasonable. You don't lose your common sense once you take a seat in the jury.

"\* \* \* But it seems to me that an intelligent man ought to be able to reason with his other fellow jurors. \* \* \*

"Now go inside and reason with each other and don't be stubborn and don't try to be a hero or heroes. \* \* \*

"I do want you to make another sincere effort, but when you go in there just don't sit there — talk, reason, listen, act like intelligent, civilized human beings."

At about 11:24 P.M. the jury sent out another note, which read: "We the 11 jurors who are in agreement about the verdict have tried hard and patiently to reason with the dissenting juror. We feel he is beyond reach of reasoning. He is either unwilling or unable to reassess his verdict. We beg your Honor's advice."

Following this note again the jury returned to the courtroom and, amongst other things, the court stated:

"What I would suggest at the present moment is that this one juror, whoever he is, \* \* \* I don't know which one it is — listen to the judge. \* \* \*

"What is troubling you? Can't you reason with each other, or is it a matter of stubbornness or is it a matter of refusing to even talk?

"Kindly go back, and this one juror, talk it over with the other jurors. You owe an obligation and a duty to the State of New York to talk, to give reasons, to try to convince the others or be convinced. This isn't child's play here. We want a verdict one way or another if we can get it without sacrificing your honest convictions based on the evidence and not on a whim or a caprice or a surmise".

The jury returned to its deliberations and, at about 11:50 P.M. sent the following note to the court: "The dissenting juror's problem is that he is not satisfied beyond all reasonable doubt that the evidence shows that the identification of the defendant in the Penguin restaurant is adequate to convict. We appreciate any further advice your Honor deems necessary."

Again the jury returned to the courtroom and further instructions were given to them concerning reasonable doubt, with emphasis on distinction between a reasonable doubt and "beyond any doubt" or "all doubt", not to mathematical certainty and "not to be resorted to solely to afford an escape from doing a painful or disagreeable duty."

The result of the various notes sent out by the jury was to reveal that there was a lone dissenter and that the dissenter, obviously, was for a "not guilty" verdict. Under the circumstances disclosed in this case, while it is true that the court did, on other occasions, speak of a juror's right to adhere to his honest conviction, the cumulative and repeated instructions by the court, apparently directed to the one dissenting juror, may well have had the appearance of a coercive effect on that juror.

McNALLY and WITMER, JJ. (dissenting). We vote to affirm the judgment convicting the defendant of grand larceny in the first degree and assault in the second degree. None of the four principal grounds for reversal asserted by the defendant is sustained by the record.

(1) Defendant claims it was prejudicial error for the police to return part of the currency which defendant was charged with taking, and error to introduce upon the trial evidence of such return. The principal point assigned

as error in this respect is the alleged implication thereby conveyed to the jury that the police had already established the truth of the charge of the complainants upon which the jury was asked to convict the defendant. This of course is improper (*People* v. *Rosenfeld,* 11 N Y 2d 290). But no objection was made to the District Attorney's sole question as to whether "some of this money was returned" (presumably to explain its absence from the trial), nor to the answer that "$1000 was released". Instead, defendant pursued the point on cross-examination and asked "Is it normal procedure in the Police Property Clerk's office to release evidence before the termination of a case?", to which the witness answered, "I don't know". To whom the money was released was not brought out. Defendant's failure to object to the question and answer, and indeed his acceptance and use of it, preclude his reliance upon it as error on this appeal.

(2) Defendant asserts that the District Attorney exceeded the bounds of propriety in his summation to the jury in calling defendant's principal witness a liar and perjurer (see *People* v. *Fowler,* 269 App. Div. 797). The District Attorney might well have contented himself with demonstrating, *as he then proceeded to do,* the apparent falsity of the witness' testimony. In this case his language was not prejudicial and does not warrant a reversal in view of the strong proof of appellant's guilt.

(3) During one of the jury's reports to the court while seeking instructions, the jury foreman volunteered to the court that they stood 11 to 1, and that "the dissenting juror's problem is that he is not satisfied beyond all reasonable doubt that the evidence shows the identification of the defendant in the Penguin Restaurant is adequate to convict. We appreciate any further advice Your Honor deems necessary."

This statement by the jury foreman, of course, constituted no error on the part of the Justice presiding. He properly accepted the statement as requesting a further charge on the subject of reasonable doubt, and he proceeded to give such further instructions, correctly. There was no reversible error in this. (See 23A C. J. S., Criminal Law, § 1380, subd. c.)

All of the court are in agreement that the foregoing assignments of error do not constitute ground for reversal. It is as to the fourth assigned error that the court is divided.

(4) Defendant claims that the court erred in keeping the jury deliberating as long as it did (see CPLR 4113, subd. [b]), and in its various instructions made in an effort to secure a verdict.

The jury retired at 10:57 A.M. on January 21, 1966 to deliberate on their verdict. At 6:48 P.M. the jury requested an opportunity to view the premises where the alleged hold-up occurred. The court denied the request, and sent the jury to dinner. At 10:30 P.M. the jury foreman reported that the jury were "hopelessly deadlocked 11 to 1. This vote has not changed since 1:00 P.M." The court then addressed the jury, saying in part:

"Now, members of the jury, it is not my intention to coerce you or to force you. If you can't agree, you just can't agree. However, before I accept a disagreement I want to make one final effort to help you.

"I am going to ask you to go back and then ask me; if there is anything that this one juror wants clarified, I am here to clarify things for you. A juror should not be stubborn. A juror should not try to be a hero. A juror should reason with his fellow jurors. A juror should permit himself to be reasoned with.

"I don't know how you stand * * * All I know is that it is 11 to 1. Now, of course, a juror should stick to his convictions, whichever way it is, if he is doing it out of a firm conviction based on the evidence and not

based on some whim or some caprice or some hunch or because of some feeling of foolish pride that he has taken a position one way and just won't change no matter what happens. Permit yourself to be reasoned with. Be reasonable. You don't lose your common sense once you take a seat in the jury.

"I don't know how your vote is. I don't know which way it is. But it seems to me that an intelligent man ought to be able to reason with his other fellow jurors. That goes for the eleven jurors as well as for the one juror. Just don't be stubborn. You have got a duty to perform. The People of the State of New York have performed their duty. The defendant's lawyer has performed his duty. The judge has performed his duty. Can't we get a performance of the duty from twelve sensible men? * * * And come back to me and ask me if there is anything that I can help clarify for you.

"Remember what I told you, base your decision on the evidence, what you have heard, not on what you are imagining or what you are conjuring up in your minds. Decide what testimony you believe and act on it, if you find that it is sufficient under the law that I have given you.

"Now go back, members of the jury. Do your duty conscientiously and don't by any stretch of the imagination permit me to coerce you, because that is not my intention to do it. I do want you to make another sincere effort, but when you go in there just don't sit there".

At 11:03 P.M. the court called the jury back and said in part:

"I want you to decide amongst yourselves whether or not there is any likelihood of your arriving at a verdict within the next half hour or so, because if there is no such likelihood I have got to consider making arrangements for a hotel for you, and I can't do that at two or three o'clock in the morning.

"So, go back now and let me know as soon as you can whether or not there is likelihood of your arriving at a verdict so that I can decide what I have to do."

The jury then retired at 11:06 P.M. At 11:24 P.M. the jurors returned and the foreman reported:

"We the eleven jurors who are in agreement about the verdict have tried hard and patiently to reason with the dissenting juror. We feel he is beyond reach of reasoning. He is either unwilling or unable to reassess his verdict. We beg Your Honor's advice."

In response the Judge said in part:

"go back and if there is anything you don't understand, if there is anything you want clarified, the judge is willing to help you clarify it. The judge is willing to explain it. The judge is willing to read a portion of the charge again. If there is any part of the evidence that you want read back, it will be read back.

"What is troubling you? Can't you reason with each other, or is it a matter of stubbornness or is it a matter of refusing to even talk?

"Kindly go back, and this one juror, talk it over with the other jurors. You owe an obligation and a duty to the State of New York to talk, to give reasons, to try to convince the others or be convinced. This isn't child's play here. We want a verdict one way or another if we can get it without sacrificing your honest convictions based on the evidence and not on a whim or a caprice or a surmise.

"I am trying to fathom what it is that is disturbing you, and I am talking to all of you. If you can't agree on all the counts and if you can agree on one or two counts, agree on what you can agree on and tell me that you agree on that and you don't agree on the others, but primarily I don't want to coerce you, I don't want to force you. I want any juror who has an honest, sincere, reasonable appraisal of the evidence which stands the light of reason upon arguing with his fellow jurors to stick to his reason, if it stands the

light of reason with his fellow jurors. And I want that juror to tell me, if he wishes, what it is he would like me to do to help him arrive at a decision one way or another, or I want even the majority of the jurors to do the same thing if there is anything they think can help clarify the situation.

"Now, let's try once more, and let me know as soon as you can whether there is anything you want me to do."

The jury retired again at 11:28 P.M. At 11:50 P.M. they returned with the note quoted under point (3) above, that the dissenting juror was not satisfied beyond all reasonable doubt. The court said:

"Now, of course, if a juror just isn't satisfied I can't do anything about that. That is his job. He has got to be satisfied. He, together with the rest of you jurors, constitute the body that are the sole judges of the facts.

"Perhaps if I read again the Court's charge on what is meant by a reasonable doubt it might serve to help, so I will read it again and then you go back and if it helps you arrive at a decision one way or another let me know, and if you think that there is no use, let me know, too, so that I can decide whether to make arrangements for you or what to do."

The Judge then continued and gave the jury further instructions on the question of reasonable doubt, and concluded:

"Now, if there is a reasonable doubt then the defendant is entitled to an acquittal. If there is no reasonable doubt he should be convicted.

"Now go back and deliberate a little longer and let me know."

The jury retired at 11:59 P.M. At 12:30 A.M. on January 22 the jury returned with the following note:

"We feel it is impossible to come to a decision tonight. The vote is still eleven to one and we cannot seem to move this juror on any point."

The following then transpired between the court and the jury foreman:

"Let me ask you: you say you cannot come to a decision tonight. If I sent you to a hotel and you got a good night's rest and you started tomorrow, what is your opinion?

"THE FOREMAN: Well, there appear to be differences of opinion on that point, your Honor.

"THE COURT: Well, under those circumstances, I will leave it to you to continue to deliberate and let me know what your wishes are. You tell me there are differences of opinion. If there are differences of opinion I have no right to interrupt your deliberations or to stop your deliberations, unless there is absolutely no hope, and, according to what you tell me, it isn't absolutely hopeless.

"THE FOREMAN: No, some of the jurors feel that we have come to a loggerhead tonight and possibly tomorrow it may change.

"THE COURT: All right.

"THE FOREMAN: But at the moment they don't feel it will be of any value continuing tonight.

"THE COURT: All right. If you feel possibly tomorrow it might change, then it is the Court's duty under those circumstances, in view of what has happened, in view of the terrific expense and in view of what has gone by, not to interrupt your deliberations and not to deprive you of what some jurors feel is a possibility, and so under those circumstances please retire and let me know what arrangements you want me to make for your comfort, whether you want me to send you to a hotel or whether you want to continue for a little while longer, but according to what your note says, it is impossible to come to a decision tonight. Therefore, it would seem to me that what I should do is send you to a hotel.

"So go back and let me know what you want to do."

At 12:36 A.M. the jury again retired. At 1:00 A.M. the court received two notes from the jury, but before it could get counsel and defendant into the courtroom, the jury asked for a few more minutes. At 1:25 A.M. the jury returned and announced that they had agreed upon a verdict, to wit, not guilty on the first count, guilty on the second count of grand larceny in the first degree and guilty on the third count of assault in the second degree.

We think it is clear from the foregoing recital of the pertinent parts of the Judge's supplemental instructions to the jury that he did not coerce them by threatening to hold them over night as was the case in *People* v. *Riley* (20 A D 2d 599) and *People* v. *Josey* (19 A D 2d 660). Here the foreman said that the jury felt that they could not reach a verdict that night, that there were differences of opinion as to whether they should continue their deliberations, that it was not hopeless, and that some of the jurors felt that they had come to a loggerhead for the night but possibly tomorrow it might change. Thereupon the court asked the jury, in view of the situation, to go back and let him know what they wanted to do. So long as the jury felt that they might reach a verdict by continuing their deliberations it would hardly be proper for the Judge to discharge them. It was clear to the jury then that if they said it would be useless to continue deliberating the court would have discharged them. Certainly in such circumstances it cannot be said that he coerced them when he permitted them to continue to deliberate as they requested.

The statements of the court to the jury as to the importance of their coming to an agreement if they could do so, consonant with the law as charged to them and their finding of the facts, and his warning to them against stubbornness were proper (*People* v. *Randall*, 9 N Y 2d 413, 425).

The record on the whole shows that whenever the Judge addressed remarks to the one juror he balanced them with remarks to the rest of the jury, and on several occasions he urged the juror to reason with his fellow jurors, but stick to his convictions if not convinced, and so no undue pressure was placed upon the one juror to agree with the majority, which was the error found in *Field* v. *Field* (283 App. Div. 372) and *Acunto* v. *Equitable Life Assur. Soc.* (270 App. Div. 386). This is abundantly clear from the Judge's statement that "if a juror just isn't satisfied I can't do anything about that. That is his job. He has got to be satisfied. He, together with the rest of you jurors, constitute the body that are the sole judges of the facts." The Judge used great care to speak impartially on each occasion he addressed the jury (see PJI 1:100).

It is easy for a Judge to declare a mistrial because of jury disagreement, and thus be relieved of the onus of all the rulings made upon the trial. Where a conscientious Judge does his best, fairly, to have the jury perform their duty conscientiously, as was the case here, his acts should not lightly be disturbed. The majority are reversing the judgment for error as a matter of law committed by the Trial Justice in his supplemental charge. We believe that the Trial Justice acted well within his sound discretion, and that there is no error in law. Instead of reversing, we would commend the Trial Judge and affirm the judgment.

Botein, P. J., Stevens and Capozzoli, JJ., concur in memorandum by the court; McNally and Witmer, JJ., dissent in opinion.

Judgment of conviction reversed, on the law, and new trial ordered.