[No. 40079.    Department Two.    June 6, 1968.]

JOHN IVERSON, *Respondent,* v. PACIFIC AMERICAN FISHERIES, *Appellant.*\*

*Jack E. Hepfer* and *William R. Lanthorn,* for appellant.

*Casey & Pruzan,* by *John F. Kovarik,* for respondent.

HILL, J.—This is an appeal from an order granting a new trial, after a verdict for the defendant (11 to 1) in a personal injury action.

The trial court was convinced that an instruction given the deadlocked jury coerced two jurors into a defense verdict.

The circumstances leading to that conclusion were: That at about 10 p.m., after 8 hours of deliberation, the jury sent

\*Reported in 442 P.2d 243.

a note[1] to the court advising that they were deadlocked—
standing 9 to 3 for the defendant; the Washington Pattern
Jury Instruction (WPI 1.05)[2] intended for such circum-

[1] The note was as follows:

"Upon reviewing the evidence in regards to exhibits, testimonies and statements in regards to this case we at this point are at a standstill. We have covered all evidence to the best of our ability and are not at this time able in all fairness and honesty able to reach a proper verdict.

"Our first vote ended in a disagreement of—Defendant: 5 Plaintiff: 3 Spilt: 4. We again viewed the evidence to the best of our ability and again reached a verdict but not 10-2. The vote was Defendant: 9 Plaintiff: 3. However, one member placed on his ballot his (decision against) but was not clear as to which of the two parties he was against.

"Repetition of reviewing the evidence which upon taking the vote we found as such. Defendant: 8 Plaintiff: 4. As foreman I tried to approach the situation in establishing a certain point which is important to this case. We then discussed this point—took a vote which was yes - 8 no - 4. Upon relaxing our minds for awhile we decided to take a vote to determine as of the first vote. Defendant: 9 Plaintiff: 3.

"As foreman I felt at this time we should inquire what we should do in regards to the evidence at this time. This is stated to the best of my ability as appointed foreman for this jury. . . ."

[2] WPI 1.05 reads:

"Any verdict you reach must be agreed upon by ten jurors. In your deliberations you should examine the questions submitted with a proper regard and consideration for the opinions of each other. You should listen to each other's arguments with an open mind, and give due consideration to the opinions of your fellow jurors without surrendering your own convictions for the law contemplates that by your discussion you should harmonize your views if possible and thereby arrive at a verdict. On the other hand, the law does not contemplate that you compromise with your consciences nor yield your views for the mere purpose of agreement. You should make every reasonable effort to reach a verdict.

"Again let me remind you that you should not single out any instruction or part thereof, including this one, and place undue emphasis upon it. In your deliberations continue to consider the instructions as a whole."

A portion of the "Note on Use" reads as follows:

"In giving this instruction, the following procedure should be employed.

". . . .

"2. In the presence of both counsel and the reporter, the jury should be returned to the box, and the court, after cautioning them not to reveal the numerical division in the voting or which side has the preponderance, should ask the foreman if they are able to reach a verdict. If they are not, he should then give this instruction and return them to the jury room to deliberate further."

stances, was then read to the jury; 10 minutes after returning to the jury room, they returned with a defense verdict (11 to 1).

The trial court, as we have indicated, granted a new trial stating:

> At the time, I felt that the instruction I read was harmless, but after reading the plaintiff's brief, I do not feel that way now. In fact, I had second thoughts later on. I think, considering the length of time that this jury deliberated, and considering the jury's note to me—which did reveal the majority and minority opinion—and considering what they did after I read WPI-1, these things convinced me that the jury felt that they were being ordered by the Court to reach a verdict, and without regard to what their honest conviction might be, and that the minority was being ordered to capitulate.
>
> . . . .
>
> However, I believe, as set out in Mr. Kovarik's brief, the ultimate test is, . . . was the effect of my instruction to force a verdict, or did it start a new train of deliberation?[3] I think the effect of course was a verdict; it did not start a train of new deliberation; they simply went in, took a new vote, and that was it. So I am going to grant a new trial.

■ We agree that the immediate return of the jury, after they had been instructed to harmonize their differences and reach a verdict if possible, when considered in conjunction with the jurors' knowledge that the trial court had been informed they stood 9 to 3 for the defendant, represents almost conclusive evidence that two jurors were pressured into a change of position. Consequently we affirm the granting of a new trial by the trial court.

This, however, is not a criticism of the instruction, but a recognition of its probable coercive effect when the jurors

---

[3]This is a reference to the statement in *State v. Peirce*, 178 Iowa 417, 424, 159 N.W. 1050, 1054 (1916),

> The ultimate test would seem to be whether the additional instruction forced or helped to force an agreement, or whether it merely started a new train of real deliberation which ended the disagreement.

which is quoted and approved in *Middle States Util. Co. v. Incorporated Tel. Co.*, 222 Iowa 1275, 1279, 271 N.W. 180, 109 A.L.R. 66 (1937).

knew that the trial court had been advised how they stood on the merits of the case. Such knowledge by the jurors is the salient and distinguishing characteristic of this case.

The trial court gave the appellant additional arguments by failing to notify counsel of the jury's request for further instructions, and in giving the jury only an oral instruction in violation of Civil Rule for Superior Court 51(i).[4]

Counsel suggests also that at such a critical time a court reporter should be present so that there can be a record of exactly what was said. The "Note on Use," which follows WPI 1.05 (see footnote 2), indicates the desirability of a reporter being present.

■ Our silence regarding these additional arguments does not indicate that they are not important. The failure to comply with any or all of the requirements of CR 51(i) makes any subsequent verdict questionable if not suspect; however, it leaves the door open for a possible showing by the prevailing party that the failure to follow the requirements of the rule and the suggestions of the "Note on Use" was not really prejudicial. We need not enter into such a discussion in this case where, considered by themselves, the circumstances evidencing coercion of jurors so clearly bespeak prejudice to the plaintiff.

Because of the unusual element in this case (the knowledge of the jury—at the time of additional instruction—that the judge knew the course of the voting and their then division), our related cases involving instructions to deadlocked juries are not particularly helpful.[5]

---

[4]CR 51(i) reads as follows:

"After retirement for deliberation, if the jury desires to be informed on any point of law, the judge may require the officer having them in charge to conduct them into court. Upon the jury being brought into court, the information requested, if given, shall be given in the presence of, or after notice to the parties or their counsel. Any additional instruction upon any point of law shall be given in writing."

This rule supersedes RCW 4.44.320.

[5]There are a number of out-of-state cases in which verdicts were set aside as "coerced" when returned a very short time after an additional instruction, comparable to WPI 1.05, had been given. These include *Gaddy v. Harmon*, 191 Ga. 563, 13 S.E.2d 357 (1941); *In re Stern*, 11 N.J. 584, 95 A.2d 593 (1953); *Acunto v. Equitable Life Assurance Soc'y*

In a very early case in this jurisdiction (*Marine Sav. Bank v. Young,* 5 Wash. 394, 396, 397, 31 Pac. 864 (1892)),[6] dealing with communication between the trial judge and the jury, the rule was laid down that there should be no such communication "except in open court, and, if at all convenient, in the presence of all the parties to the action. To allow a loose practice to grow up in this regard would, we think, tend greatly to bring courts and the administration of justice into disrepute." Judge Hoyt, speaking for the court, continued:

> Yet we do not think that this rule should be so rigidly applied as to put upon the parties the expense of a new trial in every case in which there has been the slightest communication between the court and the jury while they are deliberating upon their verdict. If the communication is of such a nature that the party against whom the verdict is rendered could by no possibility have been injured thereby, a verdict against him should not be set aside. If the communication is of such a nature that it could possibly have been prejudicial to the rights of the defeated party, then, of course, the verdict should not be allowed to stand.

We are convinced that the additional instruction in this case not only "could possibly have been prejudicial to the rights of the defeated party," but also clearly was prejudicial. The trial court's order granting a new trial is affirmed.

FINLEY, C. J., HUNTER, HAMILTON, and NEILL, JJ., concur.

---

*of the U.S.,* 270 App.Div. 386, 60 N.Y.S.2d 101 (1946); *Mead v. Richland Center,* 237 Wis. 537, 297 N.W. 419 (1941).

[6]This case is quoted approvingly in *O'Brien v. Seattle,* 52 Wn.2d 543, 327 P.2d 433 (1958).