■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ERNEST SINGLETON, Appellant.—Judgment of the Supreme Court, New York County, rendered February 17, 1976, convicting defendant of attempted grand larceny in the first degree and sentencing him to five years' probation, unanimously reversed, as a matter of discretion in the interest of justice, and a new trial ordered. In this prosecution the defendant was charged with attempted grand larceny in the first degree (extortion) in that he participated with a former manager of Burger King, Inc., to obtain a sum of money from that corporation by means of a threat to kill an employee. The defendant was observed by police picking up a paper bag (containing simulated money) and thereafter was chased by police into a tenement where he was found, in a top floor apartment. The paper bag was recovered in a hallway in the tenement. The defendant, when questioned, made three statements, none of which was recorded by the investigating police officers. In the first, he denied any knowledge of the crime charged. In the second, he said he picked up the bag at the direction of two unknown men who threatened to kill his sister. In the third, he said he picked up the bag at the request of Darnell Revell, a former Burger King manager—that Revell had made phone calls to Burger King. Although the defendant stated to the officer that Revell had made calls prior to the arrangements to pick up the

money, the investigating officer testified on direct examination: "And I kept talking to him, and then he said, well, he didn't make the phone calls. He said that the whole extortion was planned by Darnell Revell, and that Revell had asked him to pick up the bag, and he had run over there and picked it up." On cross-examination this testimony was modified in the following manner: "Q. And you stated yesterdays words to the effect that Singleton told you that Revell planned the extortion; is that correct? A. Yes, sir. Q. Did Singleton use the word 'Extortion', or did he say, 'Darnell Revell told me to pick up the bag, he planned it,' words to that effect? A. He didn't use the word 'Extortion', sir. * * * Q. The fact is that Singleton didn't say that Revell planned the extortion, is that correct? A. He didn't use the word 'Extortion'." A principal issue on appeal, as before the jury, was the extent of defendant's knowledge as to the threats made by Revell at the time the bag was picked up by the defendant. The jury's concern was recorded after the jury was considering the case for a number of hours when at 4:10 P.M. the jury asked the following question: "Is there anything in the evidence, or testimony, Patrolman Marion's, or any other testimony or evidence, which is relevant to the issue, namely, the defendant's knowledge of the threat?"* The court replied in the following manner: "Well, the answer to that is yes, there is evidence which is relevant. There is no direct evidence that the defendant knew of the phone threats. There is evidence of a circumstantial nature. There are a number of items and circumstances which you may consider on the subject. Among them are the following: There is evidence, of course, that he picked up the bag at a place and time specified in one of the telephone calls to Hill. This, if believed, indicates that he was aware of at least some of the contents of that call. The evidence, of course, that he picked up the bag, as you know, comes from Detective Solak; that is a matter of direct observation—and from admissions by the defendant made to Detective Marion. There is evidence of admissions by the defendant that the man named Revell, a Burger King Manager, planned the crime and made the calls. And that what he, the defendant, did was to pick up the bag. There is also evidence from the witness Hill that the defendant was seen with Revell the day before the calls were made, and the day before the pickup was made. Now, this and all the other evidence in the case may form the basis for a conclusion that the defendant was aware of the nature and the contents of the phone calls. In other words, they may constitute a foundation for the jury to find beyond a reasonable doubt that the defendant had the knowledge in question; this determination is up to you. You are not asking me, and of course, I can't make the statement, whether he did or not, that is a determination for the jury to make. But I call these items of evidence to your attention, and that's all I can do, and refer you to the evidence as a whole and state that there are circumstances in that evidence, if believed, which would justify a conclusion beyond a reasonable doubt that the defendant was aware of the nature and the content of the phone calls. *I might say that if there weren't such evidence, I would not have submitted the case to you, I would have had to dismiss it.*" (Emphasis added.) Although defense counsel took exception to the court's reply to the jury's question, the ensuing colloquy between court and counsel did not focus on the court's final statement in its response that "I might say that if there weren't such evidence, I would not have submitted the case to you, I would have had to

---

* The note went on to state that eight members were for conviction, one for acquittal and three were undecided. The Judge did not, however, inform counsel of this statement until after the jury reached its verdict.

dismiss it." Nevertheless, in the interest of justice, we will, for reasons hereinafter stated, consider that the exception was properly directed to that portion of the court's reply. We find that the trial court went too far in responding to the jury's question. It was obvious that the jury was groping with the testimony, seeking to determine to what extent, if any, there was evidence which established that the defendant had knowledge of the threats, upon which the prosecutors relied to gain a conviction. The trial court's reference to the items of testimony as to knowledge was appropriate, because it left to the jury the consideration of that evidence and the conclusion to be drawn therefrom. The evidence as to knowledge was critical to the jury's verdict. However, the court's gratuitous comment, above-quoted, unwittingly conveyed to the jury that such evidence surely did exist in this case and suggested that there was sufficient evidence to warrant a verdict of guilty. This was improper. (Cf. *People v Earl M.,* 59 AD2d 914; *People v Henry,* 56 AD2d 610, 611; see *People v Albanese,* 27 AD2d 820, 821, revd and remitted 19 NY2d 965, revd on remission 29 AD2d 516.) Concur— Lupiano, J. P., Birns, Fein and Sullivan, JJ.; Sandler, J., concurs in a memorandum as follows: I am, of course, in agreement with the court's conclusion that the conviction must be reversed because the Trial Judge, no doubt unintentionally, "suggested that there was sufficient evidence to warrant a verdict of guilt." What disturbs me is the unmistakable implication in the court's opinion that the Trial Judge's response to the question put to him by a deadlocked jury was otherwise unobjectionable. My concern is that this implication may encourage other Judges to respond in similar circumstances in ways that seem to me clearly erroneous. I doubt very much that it was appropriate to respond to the jury's inquiry by in effect marshaling all the evidence adduced by the prosecution with regard to the issue in question. Although this was done in an unaccented way, the effect was to summarize the prosecution's theory at a critical time when the defendant had no further opportunity to respond. As to this aspect of the charge, I agree that the issue is a close one and that the question put by the jury presented the Judge with a difficult problem. Having reached that point in his response, the Trial Judge went on to say that the items of evidence that he called to the jury's attention "may constitute a foundation for the jury to find beyond a reasonable doubt that the defendant had the knowledge in question; this determination is up to you." He then went on to say: "But I call these items of evidence to your attention, and that's all I can do, and refer you to the evidence as a whole and state that there are circumstances in that evidence, if believed, which would justify a conclusion beyond a reasonable doubt that the defendant was aware of the nature and the content of the phone calls." The very most that the Trial Judge could have appropriately said at that point was that it was for the jury to determine what they believed and whether what they believed established the issue in question to their satisfaction beyond a reasonable doubt. The first quoted comment was sufficiently close to this to be essentially unobjectionable. The second quoted comment, however, was worded so affirmatively that in my view it had the distinct possibility of conveying to the jury the Trial Judge's belief in the defendant's guilt. It may well be that there is no literal difference in meaning between that which was said and that which in my view would have been proper. However, as anyone with trial experience knows, there is a dramatic difference in impact between a judicial statement that presents a jury with alternatives and one couched in an unmistakably affirmative manner that on its face invites the jury to consider only one of two possibilities. In short, I believe the response would have been objectiona-

ble even if it had not been followed by the final sentence that the opinion of the court has singled out as the sole basis for reversal. What troubles me is that an opinion appropriately reversing a conviction because the Trial Judge inadvertently conveyed his view of the evidence to the jury uses language that has the capacity to encourage other Trial Judges to make comments that they should not make and that will inevitably give rise to unnecessary appellate issues.

