IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>       Respondent,<br><br>    v.<br><br>RYAN BENJAMIN RICKERT,<br><br>       Appellant. | No. 87130-7-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

DÍAZ, J. — A jury convicted Ryan Benjamin Rickert of assault, criminal trespass, and resisting arrest. He argues the court impermissibly coerced a juror to find him guilty on the assault charge. He also avers his convictions for assault and resisting arrest violate double jeopardy. His arguments are unavailing, so we affirm.

I.  BACKGROUND

In March 2024, Rickert filled out a job application at a Safeway. An employee then called the police when Rickert did not leave after repeatedly being asked to. Based on his conduct with law enforcement when they arrived, the State charged him with assault in the third degree (RCW 9A.36.031(1)(g)), criminal trespass in the first degree (RCW 9A.52.070), and resisting arrest (RCW

9A.76.040).  A jury ultimately returned guilty verdicts on all counts after a trial that July.

When the jury initially informed the court that it had reached its verdicts, the presiding juror reported they found Rickert not guilty on count I.  However, when the court proceeded to poll them, not every juror confirmed that outcome represented their individual vote.  Specifically, the court asked the jurors collectively to raise their hands if they had voted to find him not guilty of assault.  According to the clerk's minutes, only 1 juror responded affirmatively while 11 did not.  In other words, 11 jurors found Rickert guilty of assaulting a police officer and 1 had not.  The presiding juror then confirmed their decision on count I was not unanimous.  But as to the other charges, all of the jurors raised their hands and thereby demonstrated agreement on his guilt for counts II and III.

The court excused the jurors to confer with counsel on how to proceed.  Id. The court opined that the jury did not "seem to fully understand the need for them to be unanimous as to the verdict on this count."  The court discussed whether to give a deadlocked jury instruction.  The court decided "without objection and [with] agreement," to repeat the last paragraph of the final instruction it had given before deliberations began.  Following that five-minute exchange, it called the jury back into the courtroom.

The court provided the following instruction, based verbatim on 11A WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 151.00 (5th ed. 2024):

> Because this is a criminal case, each of you must agree for you *to return a verdict*.  When all of you have so agreed, fill in the verdict

forms to express your decision. The presiding juror must sign the verdict forms and notify the bailiff. The bailiff will bring you into court to declare your verdict.

The court concluded by stating, "So with that, I'm going to have you go back to the jury room with the original instructions and verdict forms and continue deliberations in relation to what you have with the verdict forms, and we'll go from there."

Approximately 40 minutes later, the jury informed the bailiff it had reached a verdict. Rickert then moved for a mistrial. He expressed concern the jurors "still don't fully understand that they are not required to return a verdict of either guilty or not guilty and the third option is not being able to agree on a verdict." He asserted that "the Court has to take great care as to not coerce jurors into giving their positions" on the split and submitted, when the court sent the jury back to further deliberate, it may have "signal[ed] to the jury that they should come back with a verdict."

The court denied Rickert's motion. It explained "there [was] no indication" when the jury first returned "that they were deadlocked," but that "for some reason" they were simply not unanimous. And the court stated that re-reading the final instruction did not "indicate to them that they were any more obligated to reach a unanimous verdict then, [than] the first time it was read to them."

When the jury returned, the presiding juror informed the court they had reached a guilty verdict on the assault count. This time, all jurors raised their hands to confirm the same.

Rickert timely appeals.

3

## II.    ANALYSIS

### A.    Judicial Influence on Jury

Rickert first claims that the court impermissibly coerced the juror who originally disagreed on count I to change their vote and convict him of assault.

In State v. Watkins, our Supreme Court explained that two sources of law govern permissible judicial intervention "when a jury declares itself deadlocked or otherwise appears unable to reach a verdict." 99 Wn.2d 166, 171, 660 P.2d 1117 (1983). First, to ensure impartiality and prevent coercion from the trial court, Washington adopted CrR 6.15(f)(2). Id. at 172, 175. The Court interpreted this rule to prohibit supplemental instructions "which suggest any of three specific things: the need for agreement, the consequences of no agreement, and the length of time the jury will be required to deliberate." Id. But the rule "does not prohibit *all* instructions" to a jury once deliberations begin. Id. (emphasis added).

The Court then described a second legal "criterion by which [a court's] supplemental instruction must be measured," which is a broader principle emanating from the right to a jury trial. Id. at 176. Namely, a juror must be free to reach her verdict "uninfluenced by factors outside the evidence, the court's proper instructions, and the arguments of counsel." Id. (quoting State v. Boogaard, 90 Wn.2d 733, 736, 585 P.2d 789 (1978)).

Clarifying Boogaard, our Supreme Court held that, to prevail on a claim of improper judicial interference, an appellant "must provide more than mere speculation about how the trial court's intervention might have influenced the jury's verdict." Id. at 177-78. Rather, an appellant "must establish a reasonably

substantial probability that the verdict was improperly influenced by the trial court's intervention." Id. at 178; see also State v. Ford, 171 Wn.2d 185, 188-89, 250 P.3d 97 (2011) (requiring an "affirmative showing" beyond speculation.)

Here, Rickert avers the court "instructed the jury in a manner that did far more than 'suggest' the need for agreement." He claims it "explicitly instructed the jurors" that they "must" reach a verdict, violating both CrR 6.15 and his right to a jury free from improper judicial influence. This is wrong on the facts and the twin governing legal principles.

As a preliminary matter, Rickert does not cite to any opinion which has found such a violation based on comparable facts to the particular ones in this case. That is, he provides no authority for the proposition a court violates CrR 6.15(f)(2) by merely repeating a previously given, lawful instruction after a jury mistakenly returns a verdict without unanimous agreement. DeHeer v. Seattle Post-Intelligencer, 60 Wn.2d 122, 126, 372 P.2d 193 (1962) ("Where no authorities are cited in support of a proposition, the court is not required to search out authorities, but may assume that counsel, after diligent search, has found none.").

Instead, Rickert's argument relies on that instruction's use of the words "must" and "when" in isolation. But that is not how we must review the instruction; we must consider the totality of the circumstances regarding the court's intervention. Ford, 171 Wn.2d at 189. When considered in context of the complete instructions and the court's comments in full, Rickert has not shown the instruction suggested the jury had to agree to return a verdict of any kind, let alone a verdict of guilt, in particular. Instead, that instruction correctly advised the jury that

acquittals or verdicts of guilt must be unanimous and otherwise reminded the jury of the totality of its obligations.[1]  Rickert is wrong about the facts.

Moreover, Rickert does not establish the court improperly influenced the verdict as a constitutional matter because he does not "show more than a mere tendency to influence the jury." Watkins, 99 Wn.2d at 177.  Unlike in Boogaard, 90.Wn.2d at 178, or Ford, 171 Wn.2d at 188-89, he has not shown how the lawful instruction itself, or surrounding circumstances, establish "a reasonably substantial possibility," let alone a "probability that minority jurors actually were persuaded to change their votes." Watkins, 99 Wn.2d at 177-78.  Instead, as in Watkins, the instruction given here may be readily construed as a "carefully neutral explanation of the earlier instructions," clarifying an apparent misunderstanding.  99 Wn.2d at 178.

At best, the only affirmative circumstance Rickert references to suggest improper influence is that the jury reached its verdict after only 40 minutes of additional deliberation.  It is true that, as a general matter, a shorter timeframe can suggest the possibility of coercion. See, e.g., Lowenfield v. Phelps, 484 U.S. 231, 240, 108 S. Ct. 546, 552 (1988).  However, the facts in the opinions he relies upon involve more suggestive circumstances overall and even shorter periods of

---

[1] As to the latter, the court specifically reminded the jury it had a set of the complete instructions in the jury room before it repeated the unanimity instruction.  In relevant part, the complete instructions stated the jury must "consider the instructions as a whole" as they were "all important."  Those instructions also cautioned the jurors not to change their mind just for the purpose of reaching a verdict.  And the court simply told the jury to "continue deliberations" and then stated ". . . and we'll go from there."

deliberation.[2]

In short, there is here no "affirmative showing," beyond speculation, about what occurred before the jury returned with the deficient verdict, why they returned a verdict non-unanimously, nor what occurred after the jury was sent back to deliberate further. Ford, 171 Wn.2d at 188-89. Thus, this assignment of error fails.

B.      Double Jeopardy

Rickert next claims his convictions for assault and resisting arrest violate the constitutional prohibition against double jeopardy. Specifically, he asserts he was punished twice for the same offense because his counts for resisting arrest and assault required the same evidence, as they were charged and proven. We disagree.

The Double Jeopardy Clause of the Fifth Amendment offers several constitutional protections coextensive with Washington's constitution. State v. Godsey, 131 Wn. App. 278, 289, 127 P.3d 11 (2006). One aspect of double jeopardy protects a defendant from being punished multiple times for the same offense. Id. Even where offenses require no legally distinct elements, double jeopardy principles are not offended as long as the same evidence is not used to establish both charges. Id. at 290.

Rickert claims the State relied on the same evidence to prove both offenses.

---

[2] The Court in Boogaard concluded a judge's inquiry, at 9:30 p.m., had amounted to impermissible coercion where it "unavoidably tended to suggest" minority jurors, whom the bailiff had identified, should acquiesce for the sake of returning a verdict within a half hour, specifically right before the start of a holiday-weekend court closure. 90 Wn.2d at 735, 739-40. And in Iverson v. Pac. Am. Fisheries, the jury returned a verdict just 10 minutes after the court gave the challenged instruction. 73 Wn.2d 973, 975, 442 P.2d 243 (1968).

To the contrary, in its closing argument, the State referenced facts to prove the resisting arrest charge beyond the fact that he attempted to punch one of the officers, which was the premise for the assault charge. It also argued he resisted arrest by refusing to comply with officers' orders over multiple minutes and engaged in actions to evade being handcuffed such that they decided to use a taser.

Moreover, the holding in Godsey undermines Rickert's position. There, we specifically declined to find a double jeopardy violation because we concluded the State had argued the facts of the case—which like here, involved evading arrest and an alleged physical altercation—as two separate offenses, even though it had also recognized "some overlap" between them. 131 Wn. App. at 290. That is precisely analogous to the State's framing of the case here. Thus, Rickert fails to show his convictions relied on the same facts such that they offend double jeopardy principles.[3]

III.   CONCLUSION

We affirm.

_____
Díaz, J.

WE CONCUR:

_____
Chung, J.

_____, ACJ

---

[3] We need not and do not reach Rickert's interpretation of legislative intent.